ALLSTATE FINANCIAL CORPORA-
TION, Plaintiff–Appellant,

v.

FINANCORP, INCORPORATED,
Defendant–Appellee.

No. 90–1840.

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1991.

Decided May 28, 1991.

Michael Edward Levy, argued (Patrick H. Stiehm, on brief), Allstate Financial Corp., Arlington, Va., for plaintiff-appellant.

James E. Carbine, argued (M. Albert Figinski and Donna C. Sanger, on brief), Weinberg and Green, Baltimore, Md., for defendant-appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

ERVIN, Chief Judge:

In March 1989, Allstate Financial Corporation ("Allstate") filed an amended complaint against Financorp, Incorporated ("Financorp") in the United States District Court for the District of Maryland. Allstate sought damages for unjust enrichment, conversion, and trespass to chattels allegedly suffered when Financorp negotiated two checks made payable to Kane Delivery Limited, d.b.a. Advance Disposal Service ("Kane"). Allstate asserted that it had superior rights to the checks as they represented proceeds of collateral in which Allstate had a prior perfected security interest.

The parties conducted discovery in the case. Afterwards, on November 3, 1989, Allstate moved for summary judgment. Financorp moved for summary judgment three days later. The district court determined that a hearing was not necessary in order to rule on the summary judgment motions. On July 30, 1990, the district court entered an order granting summary judgment in favor of Financorp, denying Allstate's motion. Allstate appealed from this order. On review, we find that the district court properly granted summary judgment in favor of Financorp. Therefore, we affirm.

## I

Allstate is a Virginia corporation engaged in the business of purchasing commercial accounts receivable. Financorp is a Maryland corporation engaged in the business of making loans based upon accounts receivable. This suit arises out of the competing claims of Allstate and Financorp as to two checks which were received by Kane, a debtor of both Allstate and Financorp. Three contracts are involved in this suit.

The first contract was between Allstate and Kane. Under this contract, Allstate advanced monies to Kane and financed, or purchased, Kane's accounts receivable from Kane's delivery business. This contract was conducted in two stages. The first was between August 1987 and February 1988. The second was between July 1, 1988 and October 27, 1988. Allstate advanced a total of $192,749.06 to Kane during those periods. Approximately $114,000 remains outstanding. Under this contract, Allstate received a security interest in Kane's accounts receivable. At the time of the contract, Kane was located in Washington, D.C. Therefore, on September 23, 1987, Allstate filed a financing statement with the Recorder of Deeds of Washington, D.C. Kane subsequently moved to Maryland. Within four months of Kane's move, Allstate filed a financing statement in Maryland to maintain its perfected security interest in the accounts receivable.

The second contract was between Kane and Laidlaw Waste Systems, Inc. Under this contract, Kane became a subcontractor for Laidlaw. Laidlaw made all payments under this contract by check made payable to the order of Kane.

The third contract was between Kane and Financorp. Under this contract, Financorp made loans to Kane and received an assignment of the Laidlaw accounts receivable in exchange. Financorp advanced to Kane a total of $301,279.45, and $157,636 remains unpaid. Prior to entering this contract with Kane, Financorp searched the Maryland UCC lien filings to ascertain whether there were any prior liens on the accounts receivable. The search revealed no such filing, as Allstate did not file in Maryland until after this search was conducted. Financorp did not search the Washington, D.C., UCC filings.

Periodically, Laidlaw made payments by check to Kane. Then, pursuant to its contract with Financorp, Kane indorsed some of the checks to Financorp. Two of those checks are at issue in this case. They totalled $96,888.33. Financorp negotiated the checks and applied them to the amount due from Kane. Allstate claims that it had a superior right to those two checks because of its contract with Kane whereby it obtained a security interest in Kane's accounts receivable.

The district court found that Financorp had a right to the checks that was superior to Allstate's because Financorp was a "holder in due course" as defined by the UCC. Under § 9–309 of the UCC, a holder in due course has priority over an earlier security interest, even if that prior interest was perfected. Therefore, the court determined that Financorp was entitled to summary judgment, and this appeal followed.

## II

On appeal, we review summary judgments *de novo*. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990); *Higgins v. E.I. Du Pont De Nemours & Co.*, 863 F.2d 1162, 1166–67 (4th Cir.1988). Therefore, we should determine whether summary judgment is appropriate in this

case. *See Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547 (5th Cir. 1987).

Summary judgment is appropriate when there is no genuine dispute as to a material fact, and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller,* 906 F.2d at 973. On a motion for summary judgment, we must draw any inferences in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Summary judgment is appropriate where the record as a whole could not lead a reasonable trier of fact to find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

■ If the non-movant fails to make a sufficient showing on an element on which he has the ultimate burden of proof, summary judgment is appropriate because there is no genuine issue of material fact due to the complete failure of proof on an essential element of the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Further, the party opposing a properly supported motion for summary judgment may not rest upon the mere allegations in his pleading but must set forth specific facts that show there is a genuine issue for trial. *Rivanna Trawlers Unltd. v. Thompson Trawlers,* 840 F.2d 236, 240 (4th Cir.1988).

### III

■ Allstate first asserts that the district court erred in granting summary judgment to Financorp based on Financorp's status as holder in due course. A holder in due course is defined by § 3–302 of the UCC as follows:

(1) A holder in due course is a holder who takes the instrument

(a) For value; and

(b) In good faith; and

(c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

Md. Commercial Code Ann. § 3–302 (1975). Allstate claims that Financorp cannot be a holder in due course because it had notice of Allstate's claims and therefore did not meet the third prong of the definition. Allstate asserted that Financorp had notice for two reasons: (1) Financorp may have had actual knowledge of Allstate's interest in the proceeds of Kane's accounts receivable, and any question of knowledge is a disputed question of fact not proper for resolution on summary judgment; and (2) Financorp had constructive notice of Allstate's claim to proceeds by virtue of Allstate's filing in Washington, D.C. Both assertions are invalid.

When Financorp moved for summary judgment, it attached a sworn affidavit of Wayne Thornton, vice-president of Financorp. Thornton was responsible for processing and collecting the accounts receivables financing agreement between Kane and Financorp. Thornton testified that he obtained a search of the Maryland UCC filings and found no evidence of any prior claims to Kane's accounts receivable.[1] He also testified that he had no knowledge of any prior claim to the two checks at issue in this case.

In response to Financorp's motion for summary judgment which was supported by this affidavit, Allstate provided no discovery documents to refute Financorp's assertion that it had no knowledge of Allstate's prior claims. Rule 56(e) of the Federal Rules of Civil Procedure provides that a party opposing a properly supported summary judgment motion may not rely on his

---

1. In fact, there was no filing at that time. Under § 9–103, a secured party whose security interest was already perfected in another state has four months from the time the property is brought into Maryland to file in Maryland. If the secured party does file in Maryland within the four month period, the interest is continu- ously perfected. Md.Commercial Law Code Ann. § 9–103 (1975). Under the present facts, Allstate did file in Maryland within the four month period, but the filing occurred *after* Financorp entered its contract with Kane and conducted the record search.

allegations in his complaint, but must set forth specific facts showing there is a genuine issue for trial.[2] *See Rivanna Trawlers*, 840 F.2d at 240; *Pennsylvania Life Ins. Co. v. Bumbrey*, 665 F.Supp. 1190, 1193 (E.D.Va.1987). Because Allstate offered no affidavits, depositions, or other discovery documents to support its contention that Financorp had actual knowledge of its prior claim, summary judgment on this issue was proper. *Compare Chrysler Credit Corp. v. Burton*, 599 F.Supp. 1313, 1319 (M.D.N.C.1984) (granting summary judgment on issue of whether party had notice) *with Cram v. Sun Ins. Office, Ltd.*, 375 F.2d 670, 674 (4th Cir.1967) (holding that summary judgment on issue of intent was not appropriate when the contract at issue was ambiguous).

■ Allstate's claim that Financorp had constructive knowledge of its prior claims because of Allstate's filing of its security interest fares no better. Section 9–309 of the UCC specifically refutes this argument; it provides in pertinent part: "Filing under this title [Article 9] *does not constitute notice* of the security interest to such holders or purchasers." Md.Commercial Law Code Ann. § 9–309 (1975 & Supp.1986) (emphasis added). One noted UCC commentator has explained the purpose of § 9–309 as follows:

> Out of an excess of caution the drafters in the last sentence of 9–309 have told us that an Article Nine filing does not "constitute notice of the security interest to such holders or purchasers." That is to say, filing is not constructive notice of a third party's claim of title which would prohibit a subsequent taker from becoming a holder in due course....

J. White & R. Summers, *Uniform Commercial Code* § 20–5 (2d ed. 1980). Under the plain language of § 9–309, Allstate's filing of its security interest did not constitute constructive notice of its claims to Financorp. *See Citizens Valley Bank v. Pacific Materials Co.*, 263 Or. 557, 503 P.2d 491, 493 (1972).

■ In another argument, Allstate asserts that Financorp cannot be a holder in due course because Financorp was already a *junior* lienholder. Allstate attempts to rewrite the definition of holder in due course and insert words into the definition which are plainly absent. This we cannot do. The definition of holder in due course does not say anything about status as a lienholder—senior, junior, or otherwise. Section 3–302 merely sets out requirements which, if met, entitle a party to certain protections of that status. *See* Md.Commercial Law Ann. § 3–302 (1975).

As the foregoing discussions demonstrate, Allstate is unable to show that Financorp had any notice of Allstate's prior claims in this appeal. In addition, a junior lienholder is not precluded from being a holder in due course. Therefore, Allstate's attack on Financorp's status as holder in due course fails.

## IV

■ Allstate next attacks the district court's determination that Financorp, as a holder in due course, had superior rights to a prior secured party. Section 3–305(1) of the UCC provides that a holder in due course takes an instrument "free from all claims to it on the part of any person." Md.Commercial Law Code Ann. § 3–305(1) (1975). Thus, under Article 3, it appears that Financorp as a holder in due course took the two checks free of Allstate's claims to them.

Allstate claims that Article 3 is subject to Article 9, and that the priority scheme of Article 9 controls and gives Allstate priori-

---

**2.** Fed.R.Civ.P. 56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

ty as a prior secured party.[3] The district court found that the controlling provision of the UCC in this case was § 9–309. We agree with the district court. Section 9–309 sets out the relative priority between Article 9 and Article 3 concerning the rights of a holder in due course and a secured party. J. White & R. Summers, *Uniform Commercial Code* § 25–18 (2d ed. 1980). Section 9–309 provides in pertinent part:

> Nothing in this title [Article 9] limits the rights of a holder in due course of a negotiable instrument (§ 3–302) or a holder to whom a negotiable document of title has been duly negotiated (§ 7–501) or a bona fide purchaser of a security (§ 8–302) and such holders or purchasers take priority over an earlier security interest even though perfected.

Md.Commercial Law Code Ann. § 9–309 (1975 & Supp.1986).

Few courts have dealt with the operation of § 9–309 under facts similar to those in the present case. However, one leading commentator has addressed a similar set of facts in an explanation of how § 9–309 operates. *See* J. White & R. Summers, *Uniform Commercial Code* § 25–18 (2d ed.1980). The commentator explained that a priority problem arises

> when a prior lender claims a proceeds (9–306) interest in negotiable instruments that arise on the sale of his collateral, and the debtor transfers the instrument to a holder in due course. By virtue of 9–309 and Article Three, the holder in due course will be victorious in such a case.

*Id.*

One of the few courts to address the issue involved here was the Texas Court of Civil Appeals in *Dallas Bank & Trust Co. v. Frigiking, Inc., Div. of Smith Jones, Inc.,* 692 S.W.2d 163 (Tex.Ct.App.1985). There, Dallas Bank and Frigiking were secured parties regarding inventory and proceeds, although Frigiking's security interest was perfected first. *Id.* at 164. Dallas Bank asserted holder in due course status and claimed that its right was superior to Frigiking's prior perfected security interest in the proceeds of inventory. The trial court determined that Dallas Bank was not a holder in due course. *Id.* at 166. The court of appeals reversed that determination, holding that Dallas Bank met the definition of a holder in due course and was entitled to the rights of that status. *Id.* Therefore, the court of appeals held that "Dallas Bank's status as holder in due course gave it priority over Frigiking's prior security interest...." *Id.* at 167.

The Court of Appeals of Illinois also grappled with the issue of priority involving holder in due course status in *Farns Associates, Inc. v. South Side Bank,* 93 Ill.App.3d 766, 49 Ill.Dec. 128, 417 N.E.2d 818 (1981). There, Farns claimed priority to checks negotiated by South Side Bank because of its prior perfected interest in cash proceeds. The Bank had a security interest in accounts receivable which was perfected later than the security interest of Farns. The Bank conducted a search of the record but failed to find Farns' filing. *Id.* 49 Ill.Dec. at 130, 417 N.E.2d at 820. The bank claimed priority to the checks based on its alleged status as holder in due course. The court of appeals determined that the Bank was not a holder in due course because the checks had been illegally endorsed. *Id.* 49 Ill.Dec. at 133, 417 N.E.2d at 823. As a result, the court found that Farns had priority over the checks. However, the court noted that if the Bank had been a holder in due course, its interest would have been superior:

> The Bank's final contention is, even assuming Farns has a prior perfected security interest in the proceeds, the Bank remains entitled to the proceeds because it is a holder in due course of the negotiable instruments received. If the Bank qualifies as a holder in due course, the Code would permit it to keep the proceeds free of Farns' security interest.

---

**3.** The Official Comment to § 3–103 states: "In the case of a negotiable instrument which is subject to ... Title 9 because it is used as collateral, the provisions of this Title continue to be applicable except insofar as there may be conflicting provisions in the ... Secured Transactions Title." Md.Commercial Law Code Ann. § 3–103 commentary (1975).

*Id.* 49 Ill.Dec. at 133, 417 N.E.2d at 823 (citations omitted).

Neither of the above two cases focus on the fact that the party claiming holder in due course status was also a junior lien-holder or junior secured party. Rather, the emphasis is on whether the party meets the definition of holder in due course. If so, he gets priority over prior secured parties; if not, he loses.

We agree with the reasoning of *Dallas Bank* and *Farns.* Under the plain language of § 9–309, Financorp had priority over the checks at issue in this case because of its status as holder in due course. As a result, summary judgment in favor of Financorp was proper because as a matter of law, Financorp had priority over the checks at issue in this case.

AFFIRMED.