972 F.2d 339
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wallie J. EANES, III, Plaintiff-Appellant,
v.
Marquerite C. GABRIELE, Defendant-Appellee.
 No. 91-1199.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: June 11, 1991
Decided: August 4, 1992
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-89-375-R)
 Easter P. Moses, Roanoke, Virginia, for Appellant.
 Melissa Warner Scoggins, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellee.
 Affirmed.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 RUSSELL, Circuit Judge:
 
 
 1
 In this diversity action, the Plaintiff Eanes seeks to recover for personal injuries he suffered when the Defendant Gabriele, in driving her car along Route 796 in Augusta County, Virginia, struck a steel cable which Eanes had placed across the highway at a height of 2 to 3 feet without also placing some kind of warning to the traveling public approaching the wire. The collision of the car with the wire strand apparently broke the latter and caused the cable to strike Eanes on the face. Eanes brought this action in the district court against Gabriele to recover for injuries he received in this manner. Gabriele responded that Plaintiff's recovery was barred by Eanes' assumption of risk or his contributory negligence. Affidavits were filed, and both Eanes and Gabriele were deposed. On the basis of that record, the Defendant Gabriele moved for summary judgment on the ground that Eanes' own evidence established that his action was barred either on grounds of assumption of risk or contributory negligence. After a hearing, the district judge, in a carefully reasoned opinion, granted Gabriele's motion, finding action barred by the doctrine of assumption of the risk. Eanes appeals. We find no error in the conclusions of the district judge and affirm his grant of summary judgment in favor of Defendant Gabriele.
 
 I.
 
 2
 The details of the accident giving rise to this action were fully developed in Eanes' and Gabriele's affidavits of the parties therein and deposition testimony, as well as in the depositions of one or more other witnesses. There is no dispute as to the material facts involved, as follows.
 
 
 3
 Eanes was 37 years of age at the time of the accident. For some 12 or 15 years prior to the accident he had worked, first as a lineman for a short time, and thereafter as a "crew leader" (a title which Eanes stated was equivalent to "foreman") on a cable installation crew employed by the Telemedia Company or other cable companies. He was working as the "crew leader" of a three-man installation crew, consisting of himself and two apprentice linemen, at the time of this accident. As "crew leader," Eanes was responsible for directing the members of his crew in their work, or, as Eanes explained, "to take care of the men and make sure the job got done, and make sure it was done right."
 
 
 4
 At the time of the accident, Eanes and his crew were stringing a cable support strand between two poles located on opposite sides of Virginia State Route 796 a short distance from the crest of a hill. The support cable which Eanes and his crew were installing was made of stainless steel wire, one-quarter inch thick. The crew had laid the cable across the state highway, intending to raise the cable later by a reel to the proper level for permanent installation. Eanes stated that he believed the safety procedures prescribed by Virginia law would normally require him to post flagmen at both ends of the work site to warn motorists driving along the highway of the obstruction over a four-lane highway, but that in attempting to conform with the Virginia law, Eanes stated that he would usually, when working on a two-lane highway such as Route 796, "take one man off the crew and he would stand there and flag, and the other two do the work." Accordingly, on the date immediately before this accident, Eanes had instructed one crew-member, Mark Masterson, apprentice lineman, to act as flagman while the other crew members worked near the highway. Eanes offers no reason why he could not have assigned Masterson the task of flagging the traveling public before he began raising the steel wire on the date of the accident. Eanes does not contest, however, that he failed to instruct a crew member to act as a flagman on the date of the accident.
 
 
 5
 Before raising the cable off the surface of the highway, Eanes asserts that he asked Masterson, who was working near the base of one of the anchor poles which Eanes had climbed, whether there was any traffic on the highway. It is not clear why Eanes asked Masterson to look for approaching traffic since Eanes had a far more advantageous spot for observing approaching cars from his elevated location on the pole. In any event, Eanes testified that, after receiving word from Masterson that he saw no car approaching along the highway, Eanes raised the cable off the highway to a height of 2 or 3 feet, thereby completely obstructing traffic on the highway. Eanes stated he then saw Gabriele's car proceeding down the highway from the crest of the hill towards the spot where he was working. Eanes fixed the distance of the car from the cable at approximately 200 feet. He then ordered Masterson to rush over to the highway and flag down the Gabriele car. When Masterson received this order, he looked up the highway and saw Gabriele's car approaching from a distance of approximately 50 feet. Masterson attempted but was unable to reach the highway in time to warn Gabriele. Eanes' statements, however, clearly absolved Masterson of any delay or negligence in making an effort to reach the highway to warn Gabriele before her car struck the steel strand. Gabriele conceded that she did not see the steel wire stretched across the road and observed no warning of any kind that the road was obstructed. Gabriele acknowledged she saw the work being carried on, but saw no evidence that it obstructed traffic, which was traveling freely along the highway. When her car collided with the steel cable, the cable was thrown violently into Eanes' face, causing his injuries.
 
 II.
 
 6
 On this record, Gabriele moved for summary judgment under Rule 56(c) on the ground that recovery by Eanes was barred by his assumption of risk or by his contributory negligence. The district court granted Gabriele's motion for summary judgment on the grounds that the record conclusively established that Eanes was barred from recovery under the doctrine of assumption of the risk. It is this judgment which we review here. In reviewing such grant of summary judgment, we do so de novo. Allstate Financial Corp. v. Financorp, Inc., 934 F.2d 55, 57 (4th Cir. 1991).
 
 III.
 
 7
 We begin our review here with the observation that"[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action,' " which procedure is to be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Thus, summary judgment is appropriate where the record as a whole could not lead a reasonable trier of fact to find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether the record meets that test, all the evidence and inferences therefrom will be read in the light most favorable to the non-movant. Allstate, 934 F.2d at 58.
 
 
 8
 We agree with the district court that in this case Gabriele established that there was no genuine fact herein in dispute and that, evaluating those undisputed facts in the light most favorable to Eanes, it is clear that Eanes was barred from recovery under Virginia's doctrine of assumption of risk. Our reasons for this conclusion follow.
 
 IV.
 
 9
 Since this action arose in Virginia, the law of that jurisdiction is controlling on the substantive issue of liability. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938). In Virginia, " '[t]he doctrine of assumption of risk rests on two premises: (1) that the nature and extent of the risk are fully appreciated; and (2) that it is voluntarily incurred." Leslie v. Nitz, 184 S.E.2d 755, 757 (Va. 1971) (quoting Davis v. Sykes, 121 S.E.2d 513, 514 (1961)). If the two elements of the assumption of risk defense are established, the defense represents a complete bar to any recovery by the plaintiff"even though [the defendant] may be negligent." Berry v. Harm, 125 S.E.2d 851, 854 (Va. 1962). Eanes recognized that he could only defeat Gabriele's plea of assumption of risk by raising a genuine issue of fact as to the existence of one or both of the premises on which the doctrine rests, and contended that both premises were in factual dispute on this record. We disagree.
 
 
 10
 (a)
 
 
 11
 Eanes clearly appreciated the risk he was creating by stringing a steel cable across a public highway without providing any warning to the traveling public. This fact was established conclusively by Eanes' response to an inquiry into whether there was any need to provide adequate warning of any obstruction placed in a state highway. Eanes exclaimed, "Would you stretch a wire across the road and not put nobody [sic] there to watch it?" Furthermore, Eanes was aware of the Virginia laws requiring adequate warnings of any blocking of a public highway. He described these laws in his own words, as follows: "[I]f you were on a four lane highway,[1] you had to have one [flagman]; we just had to have a flagman. We could take one man off the crew and he could stand there and flag, and then the other two do the work."
 
 
 12
 Moreover, on the day before the accident, Eanes had stretched a wire across the highway. On that occasion, he directed one of his crew, Masterson, to act as flagman. He did this because both common sense and the law of Virginia mandated such conduct. The record thus shows abundantly that Eanes knew and appreciated that he was creating a substantial hazard by stringing a steel cable across a frequently traveled state highway at a height reasonably expected to obstruct motor traffic. Beyond this, he admitted that he knew the law of Virginia did not permit him to create such a hazard without posting a flagman to warn the traveling public. For these reasons, we find no merit in Eanes' contention that he did not fully appreciate the danger for which he alone was responsible.
 
 
 13
 (b)
 
 
 14
 Eanes next argues that his act was not voluntary, and that his supervisor had never given him any instruction on blocking a highway. Indeed, Eanes stated in his affidavit that he had no authority to order any crew member to "flag" motorists on the highway. When deposed later, however, Eanes conceded that he was in charge as the "crew leader," that he knew exactly how to provide from his crew a flagman whenever he blocked a highway, that he resented any suggestion that he would "stretch a wire across the road" without putting anyone out there to flag motorists of the danger of the wire, and that he had in the past stationed members of his crew in the road to flag motorists using the road. He was aware of the procedures to be followed when his crew blocked a highway, and he voluntarily chose not to follow those procedures, even though he had chosen to follow those procedures on the day before the accident.
 
 
 15
 It is manifest that the evidence before the district court established that the two exceptions which Eanes attempted to raise to the application of the doctrine of assumption of risk, i.e., a lack of "full appreciation of the hazard" and in the purported "voluntariness of his action at the accident," were not applicable here and that, instead, the requirements for the application of the doctrine were fully established.
 
 V.
 
 16
 Eanes seems finally to suggest that Gabriele contributed to the accident by her negligence in driving too fast. He estimated Gabriele's speed at "60, maybe." Gabriele contradicts this, testifying in her deposition to a speed of not more than 45 miles per hour.[2] This factual dispute, however, is irrelevant to our decision here. As previously noted, in Virginia, "When one who fully appreciates the hazards of an undertaking voluntarily exposes him self to a known danger, he assumes the risk of resulting injury, and the party causing the injury is relieved of legal liability even though he may be negligent." Berry v. Hamman, 125 S.E.2d 851, 854 (Va. 1962).
 
 CONCLUSION
 
 17
 Since we conclude the district court correctly granted summary judgment based on Gabriele's defense of assumption of risk, we have no need to address Gabriele's alternative defense of Eanes' contributory negligence.
 
 
 18
 For the above reasons, we affirm the district court's summary judgment order.
 
 AFFIRMED
 
 
 [1]
 Virginia state Route 796, where the accident occurred, is a two-lane highway
 
 
 [2]
 Gabriele's car stopped about 50 to 70 feet past the point where her car collided with the wire