**SMITH BERCH, INC.**

v.

**BALTIMORE COUNTY, MARYLAND, et al.**

Civil No. CCB–98–1821.

United States District Court, D. Maryland.

July 28, 2000.

Richard C. Boldt, Baltimore, MD, Jennifer D. Collier, Law Office, Ellen M. Weber, Washington, DC, for Plaintiff.

Carol Saffran–Brinks, Towson, MD, Ellen M. Weber, Washington, DC, for Defendants.

### MEMORANDUM

BLAKE, District Judge.

Now pending before the court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Smith Berch, Inc., trading as the White Marsh Institute ("WMI"), brought this action against Baltimore County and related defendants ("the County") alleging that the County, in denying WMI a zoning permit for its proposed methadone treatment program, violated the plaintiff's rights under the Americans with Disabilities Act ("ADA") and the Due Process Clause of the Fourteenth Amendment. In an Order dated August 9, 1999, this court dismissed WMI's Section 1983 Due Process claim. The court, however, denied the County's motion to dismiss WMI's cause of action under Title II of the ADA. The court denied without prejudice the County's motion to dismiss WMI's cause of action under Title IV of the ADA.[1]

By mutual agreement, the parties have submitted cross-motions for summary judgment on WMI's claim for declaratory and injunctive relief.[2] This matter has been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the court will grant the plaintiff's motion and deny the defendants' motion.

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v.*

---

1. At that time, WMI did not move for summary judgment.

2. The court understands that the parties have resolved the plaintiff's monetary claims, and thanks Magistrate Judge Susan K. Gauvey for her assistance in this matter.

*Stroud,* 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Technology Corp.,* 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## BACKGROUND

The facts of this case are set forth in detail in *Smith–Berch, Inc. v. Baltimore County,* 68 F.Supp.2d 602, 621–23 (D.Md. 1999). The additional facts offered by the parties since that opinion are as follows.

Baltimore County follows a permissive zoning system whereby a use that is not delineated by the Baltimore County Zoning Regulations ("B.C.Z.R.") is not permitted. (Pl.Mot., Ex. A) The delineated uses are broadly defined, however, and most non-listed uses can fit within a listed use. (*Id.*) The County considers both "for-profit counseling centers" and "for-profit drug treatment programs" to fall within the B.C.Z.R. definition of "office." (Pl.Mot., Ex. C) Accordingly, these centers may locate as of right in a Business Roadside ("B.R.") zone (the zone in which WMI sought to locate) so long as they do not dispense drugs. (*Id.*) On the other hand, proposed drug treatment programs that offer methadone therapy must undergo a public hearing to determine both their category of use and, if not permitted as of right, whether they can obtain a special exception as a community care center. (Def.Mot., Ex. 1, pp. 3–4)

Evidence exists that the defendants had previously considered for-profit methadone clinics to have a right to locate in a B.R. zone without a public hearing. In 1993, the County Council passed Resolution 19–93 asking the Baltimore County Planning Board ("Planning Board") to consider proposing amendments to the B.C.Z.R. that would define methadone clinics and restrict them from inappropriate zones. (Pl. Mot., Ex. D). This resolution stated that "methadone clinics fall into the classification of medical clinics and are permitted as of right in business and manufacturing zones." (*Id.*)

In response to this resolution, the Baltimore County Office of Planning and Zoning ("Planning Office") prepared a report. This report, dated April 12, 1993, states that methadone clinics fall "within both the definition of 'office' and the definition of 'medical office,' and not within the narrower definition of 'medical clinic.'" (Pl.Mot., Ex. E, p. 2) Both "offices" and "medical offices" are permitted as of right in a B.R. zone. (*Id.*) Additionally, the Planning Office noted:

> The Baltimore County Office of Law has advised that it would be extremely difficult, legally, for a locality to differentiate between non-profit and for-profit land uses or to require separate standards for methadone clinics as compared to medical offices. The manner in which a medical facility is run is not a land use issue, but rather is under the purview of the licensing agency.

(*Id.* at p. 3) The report recommended no changes at that time to the zoning regulations concerning methadone clinics. (*Id.*) The Planning Board adopted this recommendation and did not respond to Resolution 19–93. (Pl.Mot., Ex. F) Later documents suggest that, following this report, the County Council perceived for-profit methadone clinics as coming within the ambit of "offices" and "medical offices." (Pl.Mot., Ex. G, p. 2)

Other County agencies also have issued statements that for-profit methadone clinics could operate as of right under the B.C.Z.R. The County's Office of Substance

Abuse informed a private corporation attempting to open a methadone clinic in the County that "as a private for-profit organization, you have the legal right to open a program in any location, as long as you receive proper certification from the State of Maryland's Alcohol and Drug Abuse Administration." (Pl.Mot., Ex. K) Evidence likewise suggests that the Baltimore County Department of Permits and Development Management ("Permits Department") had previously permitted a for-profit methadone clinic, which was part of an "overall medical practice," to locate in the County without a public hearing. (Pl. Mot., Ex. A)

Baltimore County has one publicly funded methadone program. This program, located in a Business, Local ("B.L.") zone did not go through a hearing process before locating in the County.[3] (Pl.Mot., Ex. Q) According to the County, a zoning hearing was not required because the premises were leased by Baltimore County. (Pl. Mot., Ex. O) Therefore, the Permits Department treated the use as governmental. (*Id.*)

ANALYSIS

The parties have agreed on the legal framework for analyzing the plaintiff's ADA disparate impact claim.[4] *See* Pl. Mot., pp. 1–2; Defs. Opp'n, pp. 1–2. Under this framework, the methadone hearing requirement violates the ADA unless the defendants can demonstrate that: (1) these requirements are necessary to the County's zoning scheme, and (2) the disproportionate burden that the County's policy imposes on persons who require methadone treatment cannot be eliminated by any reasonable modifications. *See id.; Smith–Berch,* 68 F.Supp.2d at 621–23 (ex-

plaining that the defendants admit they treat proposed methadone clinics differently from other drug treatment facilities and concluding that the County's special methadone policy imposes a disproportionate burden on opiate addicts who require methadone therapy to aid in recovery). Since the undisputed facts demonstrate that the hearing requirement is not necessary to the defendants' zoning scheme, the court will grant summary judgment for WMI.

The defendants contend that eliminating the hearing requirement would fundamentally alter the County's zoning system by denying affected community members the opportunity to present their views.[5] Though public expression obviously is an important part of zoning laws, the County has required this public expression only for methadone clinics. As explained in the court's prior opinion:

[T]he County imposed a public hearing requirement on WMI, a proposed methadone clinic, that it does not impose on other types of proposed drug treatment facilities, or on medical facilities serving the general population. Furthermore, whereas the County classifies non-methadone drug treatment facilities as "medical offices" and permits them to operate in B.R. zones as of right, methadone clinics like WMI must obtain special exceptions as "community care centers" before being permitted to operate in the same zones.

*Smith–Berch,* 68 F.Supp.2d at 623. Were the County to require all medical offices and drug treatment facilities to undergo a public hearing before being allowed in a B.R. zone, the zoning policy presumably would not violate the ADA. *See id.* ("[T]he court agrees with Defendants that

---

**3.** The program was operated initially under the name "Pathfinders," by Pathfinders Addiction Services, Inc. Since 1991, it has been operated under the name "Awakenings," by Glass Mental Health Foundation, Inc. (Pl. Mot., p. 8)

**4.** WMI also raised an intentional discrimination theory of liability. Since the resolution of this issue depends on disputed material

facts, summary judgment on this theory of liability would be inappropriate and indeed is not requested by WMI. *See* Pl. Reply, p. 2 ("[I]ntentional discrimination ... is not before the Court.").

**5.** The defendants argue that the public's right to be heard is embodied in both Maryland's Public Meeting Law ("P.M.L.") and the B.C.Z.R. hearing provisions.

a public hearing requirement does not of itself establish an actionable violation of the ADA.") (internal quotations omitted). But, since the County has only allowed the public to express its opinion on methadone clinics and not on other medical offices or drug treatment facilities, the public hearing requirement imposed on for-profit methadone clinics cannot be considered "necessary" to the County's zoning system.

The defendants also argue that the public hearing for methadone clinics is necessary because methadone clinics do not clearly fit within a use permitted by the B.C.Z.R. According to the defendants, the closest categories of use for methadone clinics are "community care centers," "medical clinics," and "medical offices." The County contends that, since a methadone clinic does not clearly fit within any of these three categories, a public hearing is justified to determine the proper category for the methadone clinic.[6]

This argument, however, fails to distinguish methadone clinics from other drug rehabilitation clinics that do not dispense methadone. "Although the court acknowledges that WMI appears to fit both definitions, so do drug treatment programs that do not dispense methadone." *Id.* at 624. Therefore, "[w]hatever 'uncertainty' exists [ ] has nothing to do with the 'introduction of methadone,' but rather is a result of the generality of the two definitions and the lack of any zoning regulations specifically addressing methadone clinics." *Id.* (internal citations omitted); *see also Innovative Health Systems v. City of White Plains,* 117 F.3d 37, 49 (2d Cir.1997).[7]

---

**6.** The defendants have not explained how a public hearing would help to clarify what use category is most appropriate for a methadone clinic. The community's opposition to the location of a methadone clinic, even if justified, has nothing to do with whether a methadone clinic best fits the definition of "community care center," "medical clinic," or "medical office."

**7.** The defendants' attempt to distinguish methadone clinics from non-methadone clinics on the basis of the social services provided also is unpersuasive. Like methadone clinics,

The defendants contend that eliminating the hearing requirement would confer special privileges on the disabled. *See* Defs. Mot., p. 15 (citing *Bryant Woods Inn, Inc. v. Howard County,* 124 F.3d 597 (4th Cir. 1997) and *Oxford House, Inc. v. City of Virginia Beach,* 825 F.Supp. 1251 (E.D.Va. 1993)). This contention is without merit. As explained in the court's earlier opinion, "the County imposed a public hearing requirement on WMI, a proposed methadone clinic, that it does not impose on other types of proposed drug treatment facilities, or on medical facilities serving the general population." *Smith–Berch,* 68 F.Supp.2d at 623. WMI does not seek special treatment, it seeks only the same treatment that the County offers all other medical offices and drug treatment facilities.

The defendants have not produced any evidence sufficient to establish that the special hearing requirement for methadone clinics is necessary to the County's zoning system.[8] Accordingly, the Court will grant the plaintiff's motion for summary judgment and deny the defendants' motion for summary judgment.

A separate Order follows.

### *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Plaintiff Smith Berch, Inc.'s motion for summary judgment is **granted;**

2. Defendants' motion for summary judgment is **denied;**

---

non-methadone drug treatment centers often provide patients with a broad range of services. Similarly, issues of diversion and security cannot distinguish methadone clinics from non-methadone clinics; these are regulatory and medical issues that can be addressed by state and federal licensing requirements.

**8.** In fact, as set forth above, numerous County agencies and officials have viewed methadone clinics as having the ability to locate as of right in a B.R. zone.

3. The Clerk shall **close** this case; and

4. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.