Rose CRAIG

v.

MARYLAND AVIATION ADMINISTRATION

No. CCB 01–3506.

United States District Court, D. Maryland.

July 3, 2003.

George Edwin Golomb, Law Office of George Golomb, Baltimore, MD, for plaintiff.

John Charles Bell, Maryland Office of the Attorney General Department of Transportation, Hanover, MD, John Ki, Janice G. Salzman, Office of Atty. Gen., Md. Aviation Admin., Bwi Airport, MD, For Defendants.

*MEMORANDUM*

BLAKE, District Judge.

The defendant, the Maryland Aviation Administration, has moved for summary judgment against the plaintiff, Rose Craig. The issues in this motion have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion for summary judgment will be granted in part and denied in part.

*Factual Background*

Rose Craig, the plaintiff, is employed by the Baltimore Washington International Airport's ("BWI") Fire and Rescue Department, which is a part of the defendant, the Maryland Aviation Administration. The Fire and Rescue Department provides fire and emergency service to BWI. Ms. Craig has worked at BWI since 1992 as a paramedic and is also trained as a firefighter. During her time at BWI, Ms. Craig has served as both a firefighter and a paramedic.

The Fire and Rescue Department organizes its firefighters and paramedics into four shifts, A through D. Each shift lasts twenty-four hours and begins at seven in the morning. After working a shift, an employee typically then has seventy-two hours off. Each shift has a Division Chief who is responsible for the operation of the shift and who reports to the Chief of the Fire and Rescue Department. During the events at issue in this action, the Chief of the Fire and Rescue Department was Thomas Mack.[1]

In January, 2000, the defendant created a position called a "Paramedic Lieutenant" on each shift. The paramedic lieutenant was to supervise the paramedics on the shift. Firefighters were to be supervised by the fire lieutenant after the paramedic lieutenant position was created.[2] In order to fill these positions, they invited those employees who met the qualifications to apply. Eight people applied. Because there are four shifts, there were four positions open. Ms. Craig was not one of the four initially selected to serve as a paramedic lieutenant. However, in order to have someone filling the role of a paramedic lieutenant when a shift's paramedic lieutenant was not working, the defendant gave the four people who applied but were not selected the position of acting paramedic lieutenant. An acting paramedic lieutenant was assigned to each shift, and would perform the functions and receive the pay of the paramedic lieutenant when that shift's paramedic lieutenant was un-

---

1. Mr. Mack was appointed Chief in August 2000 and resigned in February 2002. (Pl. Mem. Ex. A & B.) His resignation followed a vote of no confidence by the firefighters' union in August 2001. The no confidence vote was based on, among other things, a union charge that Mr. Mack made "multiple, numerous, ongoing sexual remarks and com-ments directed to female firefighters, paramedics, and administrative personnel." (Pl. Mem. Ex. B. Att. 1 n. 12.)

2. Prior to the creation of the paramedic lieutenant position, both firefighters and paramedics reported to the fire lieutenant.

able to work. Ms. Craig became an acting paramedic lieutenant on A shift in January, 2000.

In June 18, 2000, for reasons that the parties agree were unrelated to any alleged discrimination, Ms. Craig resigned her position as an acting paramedic lieutenant. (Def.Mem.Ex. 2.) She remained on A shift as a paramedic.

On January 11, 2001, Ms. Craig asked to be assigned to an acting paramedic lieutenant position again. (Def.Mem.Ex. 3.) She specified that she was "willing to transfer to another shift if it becomes necessary." (*Id.*)

Through the winter and spring of 2001, the acting paramedic lieutenant position on each shift became available. Ms. Craig was not assigned the position on the A shift, B shift, or C shift, but, on March 12, 2001, she was told that she would transferred to D shift to become the acting paramedic lieutenant of that shift effective April 1. D shift, however, already had an acting paramedic lieutenant, with whom Ms. Craig would have to share duties. On March 26, 2001, Ms. Craig filed a complaint of discrimination with the MAA's Office of Fair Practices asking to be named to C shift, and alleging she was discriminated against when she was not promoted because she is female. On May 9, 2001, Ms. Craig was transferred to C shift effective June 17, 2001. On May 21, 2001, Ms. Craig filed a complaint of discrimination with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission.

Ms. Craig alleges that the defendant retaliated against her for protected activity in three ways. First, on August 31, 2001, Ms. Craig asked that she no longer be required to ride a fire engine as a part of her duties on C shift. This request was denied, allegedly as retaliation for the complaint she filed with the MAA's Office of Fair Practices. Second, on September 13, 2001, Ms. Craig requested new fire fighting equipment to replace worn out gear. She was given new equipment, but alleges that it was unsafe because it did not fit her properly. On November 4, she requested properly-fitting equipment and in mid-November she was given new equipment. She alleges being issued unsafe equipment was retaliation for filing her discrimination complaint.

Finally, on October 26, 2001, Ms. Craig was asked to assist with an emergency medical technician class at the Anne Arundel County Fire Academy. The defendant agreed to pay overtime to Ms. Craig for her time teaching the class. On November 21, 2001, the defendant informed Ms. Craig that she would no longer be paid to teach the class, rather she would have to volunteer on her own time if she were to continue teaching. Ms. Craig alleges this was retaliation for complaining about Chief Mack's conduct at a party in December of 2000. Specifically, Chief Mack told another employee of the defendant that he would like to see her "with nothing but high heels on." This was overheard by Ms. Craig and her mother, who brought the remark to the attention of Ms. Craig's union.

*Legal Framework*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion, rather, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

Further, "the party opposing a properly supported motion for summary judgment may not rest upon the mere allegations in his pleading but must set forth specific facts that show there is a genuine issue for trial." *Allstate Financial Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994), but it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

*Discrimination Claims*

Ms. Craig alleges that she was not promoted to the acting paramedic lieutenant positions of A shift, B shift, and C shift because of her gender. A plaintiff in a Title VII case can prove discrimination either through direct evidence or circumstantial evidence. *See Thompson v. Potomac Electric Power Co.,* 312 F.3d 645, 649 (4th Cir.2002) ("Because [the plaintiff] presented no direct evidence of discriminatory denial of training based on race, he was obliged to proceed under the *McDonnell Douglas* proof scheme . . . ."); *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1354 (4th Cir.1995) (citing *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), for the proposition that "In a Title VII action, '[a]s in any lawsuit, the plaintiff may prove his case by direct or circumstantial evidence.'"). In this case, Ms. Craig has produced both direct and circumstantial evidence of discrimination.

Circumstantial evidence is evaluated under the familiar *McDonnell Douglas* burden shifting regime. First, the plaintiff must prove a prima facie case of discrimination. "In order to establish a prima facie case [of a failure to promote in violation of Title VII], [the plaintiff i]s required to demonstrate by a preponderance of the evidence that: (1) she is a member of a protected class; (2) her employer had an open position for which she applied; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Taylor v. Virginia Union University,* 193 F.3d 219, 230 (4th Cir.1999)

If the plaintiff is able to prove a prima facie case the burden of going forward then shifts to the employer to articulate a non-discriminatory reason for the failure to promote. If the employer is able to articulate such a non-discriminatory reason, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146–49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (clarifying evidentiary burdens as set forth under *McDonnell Douglas* ).

*A Shift*

█ On January 11, 2001, when Ms. Craig asked to be assigned to an acting paramedic lieutenant position, the defendant maintains that Robert Lowery had already been named to that position. The affidavits of both Mr. Lowery and the decision-maker, Lieutenant Fayer, support that contention. (Def. Mem. Ex. 24 at ¶ 13; Ex. 25 at ¶ 4.) Ms. Craig disputes this assertion, however, on the basis that she had been working on A shift during the time Mr. Lowery was serving as acting

paramedic lieutenant for that shift and she was not aware he had the position. (Pl. Mem. Ex. C at ¶ 3.) Further, she argues, when she submitted her request to begin serving as the acting paramedic lieutenant on A shift, she was not told that Mr. Lowery had been named to the position and she thinks that she would have been. (Pl. Mem. Ex. K at 16.)

The defendant responds to Ms. Craig's first argument by noting that acting paramedics only serve if the paramedic lieutenant is absent. Thus, the only time one would expect that those on the shift would be aware that a person is an acting paramedic lieutenant is if the paramedic lieutenant is not at work. Ms. Craig has produced no evidence that the paramedic lieutenant was absent from work before January 11, 2001; thus, there is no reason she would have known that Mr. Lowery had been promoted. Further, even if Ms. Craig's account of when she submitted her request to act on A shift is credited, as it must be, it is simply insufficient to establish that Mr. Lowery was not appointed to the position in December of 2000. There is no genuine issue of material fact that Mr. Lowery had already been promoted to A shift when Ms. Craig applied for the position. For that reason, Ms. Craig's circumstantial case fails, because the defendant did not have an open position which she applied for. Further, her direct evidence case cannot succeed, because she cannot show that the defendant was motivated by gender when there was no open position. For that reason, the defendant's motion for summary judgment will be granted as to the defendant's failure to promote Ms. Craig to the acting paramedic lieutenant position on shift A.

*B   Shift*

■   In March 2001, there was an opening on B shift for an acting paramedic lieutenant. The acting paramedic lieutenant on C shift, Brian Francis, was trans-ferred to B shift and filled this opening. Ms. Craig argues that this opening was still subject to her January 11 request to be appointed an acting paramedic lieutenant, and that she submitted a further request on March 11 to be transferred to B shift. Despite the defendant's argument to the contrary, there is a genuine issue of material fact as to whether Ms. Craig applied for the position on B shift.

■   Ms. Craig has produced compelling direct evidence through the deposition testimony of Garry Pace that she was discriminated against on the basis of her gender in the defendant's decision not to promote her to B shift. Mr. Pace was the Division Chief on D shift in the Spring of 2001. (Pl. Mem. Ex. D at 6.) He testified that he was contacted by Lieutenant Fayer, the Division Chief of A shift, and was asked if Ms. Craig could transfer to D shift as an acting paramedic lieutenant. (*Id.* at 13–15.) D shift already had an acting paramedic lieutenant, but Mr. Pace agreed that Ms. Craig could come to D shift as an additional acting paramedic lieutenant with the expectation that she would only serve when the other acting paramedic lieutenant and the paramedic lieutenant were unavailable. (*Id.*) Mr. Pace was then called at home by Chief Mack and instructed to rotate the acting paramedic lieutenants on his shift to give both acting paramedic lieutenants an opportunity to serve, contrary to the past practice of the defendant. (*Id.*) Mr. Pace asked Chief Mack why Ms. Craig wasn't simply put on the B shift, instead of being transferred to the D shift, because, at that time, the B shift was without an acting paramedic lieutenant. (*Id.* at 15.) Chief Mack informed Mr. Pace that Ms. Craig would be placed on D shift and rotated, rather than B shift, which would deny the acting paramedic lieutenant on D shift as many opportunities to serve as an acting paramedic lieutenant,

because "we've already got one female acting lieutenant, they're taking over the department now, we don't need any more. Put [Ms. Craig] over there and we'll rotate her, that will get everybody mad at her ... and then maybe that'll take care of the problem." (*Id.* at 16.) On a motion for summary judgment, credibility determinations are resolved in favor of the nonmoving party. If Mr. Pace's deposition testimony is credited, Ms. Craig has produced direct evidence that she was not given the position on B shift because of her gender. For that reason, the defendant's motion for summary judgment as to the promotion to B shift will be denied.

### C Shift

█ When Mr. Francis was transferred from C shift to B shift, this created a vacancy on C shift. The defendant appointed James Clopein to be the acting paramedic lieutenant on C shift. Mr. Clopein had previously served as a paramedic on C shift. Ms. Craig argues both that her January 11 application was an application for this position on C shift, and that she orally asked to be placed in the acting paramedic position on C shift. The court determines that there is a genuine issue of material fact as to whether Ms. Craig applied for the position on C shift.

█ Further, Ms. Craig has produced sufficient direct evidence of discrimination to survive the motion for summary judgment as to the defendant's failure to promote her to C shift. The decision as to whether Ms. Craig should be promoted to C shift was made at the same time as that described in Mr. Pace's deposition as to whether Ms. Craig should be promoted to B shift. Mr. Pace's deposition testimony, therefore, is direct evidence that Chief Mack was both intimately involved in the decisions about who would be placed in the acting paramedic lieutenant positions at the time when the decision about C shift

was made, and that Chief Mack was of the opinion that the defendant did not "need any more" female acting paramedic lieutenants because they were "taking over the department." Mr. Pace's deposition testimony also indicates that Chief Mack was concerned about thwarting Ms. Craig's success in particular. For these reasons, resolving all inferences in favor of Ms. Craig, there is a genuine issue of material fact as to whether Ms. Craig was denied the acting paramedic lieutenant position on C shift because of her gender. The defendant's motion for summary judgment as to the decision not to promote her to C shift is therefore denied.

Finally, the court notes that the plaintiff has put forth compelling evidence that Chief Mack made a number of highly offensive comments to and about women during his tenure with the BWI Fire and Rescue Department in addition to the remarks directed at the assignment of Ms. Craig to D shift. Because the evidence which is discussed above is sufficient to survive a motion for summary judgment, the court need not determine at this time whether Chief Mack's other remarks are merely "stray remarks" under the applicable Fourth Circuit law or persuasive evidence of discrimination.

### Retaliation Claims

Ms. Craig also claims that she was retaliated against for filing a claim of gender discrimination. After she filed the claim she alleges that she was forced to ride a fire engine after she asked not to, and she was issued allegedly unsafe equipment.

Further, Ms. Craig sent a letter to her union complaining about an offensive comment Chief Mack made to a female supervisor at a party, which was brought to the attention of an Equal Employment Opportunity officer of the defendant. Ms. Craig alleges that, in retaliation for this complaint, she was no longer allowed to earn

overtime pay while teaching an EMT training course at Anne Arundel County Training Academy.

A plaintiff makes a prima facie case of retaliation when she shows that: "(1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse employment action." *Von Gunten v. Maryland,* 243 F.3d 858, 863 (4th Cir.2001). It is not disputed that when each of the decisions underlying these claims happened Ms. Craig had engaged in a protected activity.

*Riding the Fire Engine in Unsafe Equipment*

Ms. Craig alleges that the defendant retaliated against her by forcing her to ride a fire engine in unsafe equipment after she filed a discrimination complaint. On September 13, 2001, she was issued equipment that allegedly did not fit her properly and was unsafe. (Complaint at ¶ 14.) This equipment was issued to her after she asked for new equipment because the equipment she had been using was worn out. (Def. Mem. Ex. 18 at 112.) On November 5, 2001, during the time Ms. Craig had this equipment, she was directed to ride a fire engine. (Pl. Mem. Ex. C at ¶ 15.) Ms. Craig has stated the first element of her prima facie case of retaliation, that she took a protected action by filing her complaint of discrimination.

■ The defendant issued replacement equipment for the unsafe gear promptly after Ms. Craig requested it, however. She asked for new equipment on November 4, and after writing to the president of her local, she received new equipment later in November. (Complaint at ¶¶ 15, 16; Def. Mem. Ex. 18 at 117.) Based on this record, Ms. Craig has not produced sufficient evidence to create a genuine issue of material fact as to whether there is a causal connection between the filing of her complaint and the issuance of the unsafe equipment. Indeed, on the facts as alleged, she asked for the new equipment for a reason that had nothing to do with her prior complaint, and less than one month passed between when Ms. Craig brought her concern about the equipment to the defendant's attention and when she received new equipment. This simply is not strong enough to create a question that should go to a jury.

Further, the defendant argues that this is not sufficient as an adverse employment action for a retaliation claim. The defendant has produced evidence that it is the policy to assign paramedics to ride fire engines from time to time, which is unchallenged by the plaintiff. (Def. Mem. Ex. 24 at ¶ 19; Ex. 26 at ¶ 9; Ex. 30 at ¶ 6.) The Fourth Circuit has held that the manner in which an employer applies a policy "might be evidence of pretext, but it is not evidence of adverse employment action." *Von Gunten,* 243 F.3d at 869 (internal citation omitted). For these reasons, the defendant's motion for summary judgment as to this claim will be granted.

*Overtime Pay for Teaching*

■ Finally, Ms. Craig alleges that she was not allowed to receive overtime pay for teaching in retaliation for complaining about one of Chief Mack's highly offensive sexual remarks at a party in December, 2000. The defendant argues that Ms. Craig was no longer allowed to receive overtime pay for teaching for budgetary reasons. (Def. Mem. Ex. 29 at ¶ 4.) Ms. Craig disputes this by pointing out that when she was told she could not be paid for teaching, the reason given to her was that she had been disrespectful to Division Chief Thomas Harmon. (Pl. Mem. Ex. C at ¶ 9.) The defendant's stated reason for denying her overtime pay, therefore, was false. This allows an inference that Ms. Craig was denied overtime as retaliation.

*Cf. Reeves,* 530 U.S. at 147, 120 S.Ct. 2097 ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.").

Further, after Chief Mack resigned in early 2002, Ms. Craig was allowed to resume receiving overtime pay for her teaching activities. (Pl. Mem. Ex. C at ¶ 21.) This is strongly suggestive that the presence of Chief Mack at the head of the department was the determining factor in whether she was allowed to receive pay for teaching. This also allows an inference that she was denied overtime pay in retaliation for reporting Chief Mack's conduct.

Finally, Chief Mack received a vote of no confidence by Ms. Craig's union in August 2001. As the record indicates, the Chief of a Fire Department does not often survive a vote of no confidence by his or her union. (Pl. Mem. Ex. B at 15.) The union vote was motivated by, among other things, Chief Mack's inappropriate sexual comments to and about women. (Pl. Mem. Ex. B. Att. 1 n. 12.) It is reasonable to infer that Chief Mack retaliated against Ms. Craig by denying her overtime pay for her complaint against him, particularly in light of the consequences he suffered from complaints such as Ms. Craig's coming to the union's attention. Because all inferences are to be drawn in favor of Ms. Craig at this stage, the court determines that the defendant's motion for summary judgment with respect to this retaliation claim must be denied.

*Conclusion*

For the foregoing reasons, the defendant's motion for summary judgment will be granted in part and denied in part. The motion will be granted with respect to Ms. Craig's retaliation claim dealing with riding the fire engine with unsafe equipment and her failure to promote claim for the failure to be promoted to shift A. The defendant's motion with respect to Ms. Craig's failure to promote claims dealing with shift B and C and her retaliation claim for being denied overtime pay for teaching, however, will be denied.