**DALLAS BANK & TRUST CO., Appellant,**

v.

**FRIGIKING, INC., A DIVISION OF SMITH JONES, INC., Appellee.**

**No. 05–83–01487–CV.**

Court of Appeals of Texas, Dallas.

May 16, 1985.

Rehearing Denied June 19, 1985.

E.P. Keiffer, Palmer, Palmer & Coffee, P.C., Dallas, for appellant.

Ronald Z. Aland, Ungerman, Hill, Angrist & Dolginoff, Dallas, for appellee.

Before STEPHENS, VANCE and MALONEY, JJ.

STEPHENS, Justice.

Dallas Bank & Trust Co. appeals from a judgment in a suit brought by Frigiking Inc., to recover funds paid to Dallas Bank by Ivins Industries, Inc., a mutual customer. We affirm in part and reverse and render in part.

In 1978 Ivins gave both Frigiking and First National Bank of Euless a security interest in its inventory and the proceeds of that inventory. Frigiking's security interest was given and perfected prior to the interest given to First National. First National assigned its interest to Dallas Bank. Both Frigiking and Dallas Bank then extended credit to Ivins based on their security interests.

On February 15, 1980, Ivins filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. Prior to filing for relief Ivins paid Dallas Bank a total of $140,801.36. All the payments were by check. Subsequent to its petition for relief, Ivins, as debtor in possession, continued to pay Dallas Bank. The post-petition payments totaled $26,413.61. Ivins then converted from Chapter 11 reorgani-

zation to Chapter 7 liquidation, and a trustee was appointed. The trustee then liquidated the existing inventory by auction and placed the proceeds in two trustee's accounts.

The trial court found: (1) that Dallas Bank was entitled to the pre-petition payments because it received them in the ordinary course of business as a holder in due course; (2) that Frigiking was entitled to the post-petition payments; and (3) that Frigiking was entitled to the proceeds held in the trustee's accounts.

Dallas Bank contends that the trial court erred in awarding Frigiking the post-petition payments and the proceeds in the trustee's accounts. By crosspoints, Frigiking contends that the trial court erred in denying its recovery of the pre-petition payments.

On appeal, Dallas Bank challenges the jurisdiction of our state courts to determine the parties' interests in the funds. It contends that since the payments were made both during the ninety days preceding Ivins filing a petition for relief in bankruptcy and after the filing of that petition, the payments are property of the estate, over which the bankruptcy court has exclusive jurisdiction. We disagree.

The Bankruptcy Reform Act of 1978, the Code, gave the bankruptcy courts broad jurisdictional authority.[1] Under the Code, the bankruptcy courts were granted: 1) original and exclusive jurisdiction of all cases under Title 11; and 2) original *but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.* 28 U.S.C. § 1471. The determination of priorities between two competing secured parties is a related proceeding determined by state law and, therefore, not subject to the exclusive jurisdiction of the bankruptcy court. Further, § 1471(d) provides that a federal district court or a bankruptcy court may, in the interest of justice, abstain from hearing a particular proceeding arising under Title

11. It further provides that such abstention, or a decision to abstain, *is not reviewable by appeal or otherwise.* The record reflects that Dallas Bank sought to remove this cause of action to the bankruptcy court. Its petition was denied and the suit was remanded to this state's district court for an adjudication of the issues. This order of remand terminated the jurisdiction of the bankruptcy court. *Browning v. Navarro,* 743 F.2d 1069, 1078 (5th Cir.1984). The termination of jurisdiction was complete and non-reviewable when the bankruptcy court mailed a certified copy of its order to the district clerk of Dallas County. *Browning,* 743 F.2d at 1077–78. We conclude, therefore, that jurisdiction properly lies in the courts of this state.

Next, we consider Dallas Bank's contention that it is entitled to the liquidation proceeds held in the trustee's accounts because the trial court erred in finding that, as a matter of law, Frigiking's security agreement and financing statement were unambiguous and that, as a matter of law and as a matter of fact, Ivins and Frigiking both intended for Frigiking to have a general security interest in all of Ivins' inventory. Dallas Bank urges that the extraneous evidence shows that Ivins and Frigiking only intended for Frigiking to have a limited security interest in Frigiking products. We disagree. Both the security agreement and the financing statement stated Frigiking had a security interest in:

All automotive air conditioning and/or recreational vehicle air conditioning and/or truck cab air conditioning units which bear the trade name "Frigiking" along with parts and accessories now or hereafter sold by Secured Party to Debtor, *together with all accounts receivable and proceeds resulting from sale or disposal of Debtor's inventory together with all additions accessions and substitutions thereto or therefor, and all similar property hereafter acquired.* (Emphasis added).

*line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and was, therefore, not subject to the emergency rules regarding jurisdiction.

1. The actions in the bankruptcy court took place prior to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe-*

The financing statement contained the additional statement, "[P]roducts of collateral are also covered."

■ Whether a contract is ambiguous is a question of law. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980). A contract is only ambiguous when, after applying proper rules of interpretation to an instrument, it remains uncertain which one of two meanings is the intended one. A written instrument is not ambiguous if is so worded that a court may properly give it certain or definite legal meaning. *P & P Enterprises*, 596 S.W.2d at 519. We conclude that the trial court properly determined that the security agreement and the financing statement were not ambiguous in this instance. We further conclude that the extraneous deposition testimony introduced by Dallas Bank to prove the intent of the parties is not controlling and that the trial court properly found that the intent of the parties, as expressed by the instruments, was to give Frigiking a security interest in all of Ivins' inventory. When a contract is not ambiguous it is the responsibility of the court to give effect to the intent of the parties as expressed therein. It is the objective, not subjective, intent that controls. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968). Since the trial court properly found that Frigiking has a general security interest in Ivins' inventory and the proceeds of that inventory, we conclude that the trial court properly determined that Frigiking was entitled to, or had a superior security interest in, the proceeds from the trustee's auction. Dallas Bank's points of error relating to this issue are overruled.

Dallas Bank next contends that the trial court erred in concluding that it did not take the post-petition payments free of Frigiking's security interest as a holder in due course. We agree. The requirements of a holder in due course are set out in TEX. BUS. & COM.CODE § 3.301 (Tex.U.C.C.) (Vernon Supp.1985), which provides in pertinent part:

(a) A holder in due course is a holder who takes the instrument

(1) for value; and

(2) in good faith; and

(3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

■ The record reflects that Dallas Bank took the payments from both Ivins and Ivins, Debtor in Possession, for value as that term is defined by TEX.BUS. & COM.CODE § 3.303(2) (Tex.U.C.C.) (Vernon 1968); that is, by taking "the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due." There is no legally sufficient evidence to support the trial court's conclusion that Dallas Bank lacked good faith in accepting the payments. Good faith is defined as "honesty in fact in the conduct or transaction concerned." TEX.BUS. & COM.CODE § 1.201(19) (Tex.U.C.C.) (Vernon 1968). It is not sufficient that Dallas Bank had knowledge that would put a reasonable person on inquiry which would lead to discovery. There must be actual knowledge of facts and circumstances which amounted to bad faith. *Richardson Co. v. First National Bank in Dallas*, 504 S.W.2d 812, 816 (Tex.Civ.App.—Tyler 1974, wit ref'd n.r.e.). Finally, there is no legally sufficient evidence to show that Dallas Bank had notice that any check it received as payment "was overdue or had been dishonored" or was subject to "any defense against or claim to it on the part of any person." TEX.BUS. & COM.CODE § 9.309 (Tex.U.C.C.) (Vernon Supp.1985) provides:

Nothing in this chapter limits the rights of a holder in due course of a negotiable instrument (Section 3.302) or a holder to whom a negotiable document of title has been duly negotiated (Section 7.501) or a bona fide purchaser of a security (Section 8.302) *and such holders or purchasers take priority over an earlier security interest even though perfected. Filing under this chapter does not constitute notice of the security interest to such*

*holders or purchasers.* (Emphasis added).

Thus, Dallas Bank's status as a holder in due course gave it priority over Frigiking's prior security interest, and Frigiking's filing was not "notice" as contemplated by that section. TEX.BUS. & COM.CODE § 3.304(e) (Tex.U.C.C.) (Vernon 1968) emphasizes the legislative intent to protect the holder from losing his holder in due course status as the result of a secured creditor filing a financing statement covering proceeds. It provides:

> (e) The filing or recording of a document does not of itself constitute notice within the provisions of this chapter to a person who would otherwise be a holder in due course.

■ We hold that the filing of the financing statement in this instance was not sufficient notice of a claim to defeat Dallas Bank's holder in due course status with respect to the post-petition payment. We further hold that Ivins' filing for relief in bankruptcy and the payments from Ivins as debtor in possession were not sufficient to constitute notice of a claim as contemplated by the Business and Commerce Code. Notice of a claim refers to a claim against the particular instrument, and not notice of the general insolvency of the drawer or maker. *Biershwale v. Oakes,* 497 S.W.2d 506 (Tex.Civ.App.—Houston [1st Dist.] 1973], *reversed on other grounds,* 516 S.W.2d 125 (Tex.1974). The judgment of the trial court awarding Frigiking post-petition payments made to Dallas Bank is reversed, and judgment is rendered that Dallas Bank is entitled to retain those payments, free of Frigiking's security interest, as a holder in due course.

Since our reasoning with respect to Dallas Bank's status as a holder in due course applies equally to both the pre-petition and the post-petition payments, Frigiking's cross points are overruled.

Affirmed in part and reversed and rendered in part.