**In re Allen Ray DAY and Deborah Smith Day, Debtors.**

**No. 02–10394–RLJ–13.**

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

April 16, 2003.

Phil Black, Law Offices of Phil Black, Abilene, TX, for Debtor.

Mark W. Harmon, Crenshaw, Dupree & Milam, Lubbock, TX, for Ford Motor Credit Company.

## MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

On March 5, 2003, hearing was held on confirmation of the Chapter 13 plan of Allen and Deborah Day, the Debtors, and the objections to the plan filed by Ford Motor Credit Company (FMCC). The sole issue before the court is whether the plan may be confirmed containing a provision that requires FMCC to release its lien upon full payment of the stated value of FMCC's collateral, a 1995 Oldsmobile Silhouette.

This court has jurisdiction of this matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). This Memorandum Opinion contains the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

### I. Background

The Debtors' final plan, filed January 23, 2003, provides that FMCC holds a claim of $6,739.92; that its claim is secured by the 1995 Oldsmobile, which has a value of $5,200; and that the secured portion of FMCC's claim will accrue interest at 10% per annum and will be paid over 47 months. The plan further provides that "[t]he liens on the collateral . . . shall be released when the lesser of the stated value of the collateral or the allowed amount of the claim has been paid in full." FMCC is therefore required to release its lien upon full payment of the $5,200, with interest, over the 47 months.

The plan generally provides for monthly payments of $190 for 58 months. Assuming the plan is confirmed and the Debtors perform as promised under the plan, FMCC would be required to release its lien on the 1995 Oldsmobile prior to the plan completion and the Debtors' receipt of their discharge.

## II.  Discussion

■ Two cases from the Northern District of Texas have reached an opposite result on the issue before the court. Judge Harold C. Abramson, in *Thompson,* a 1998 opinion, held "that a secured creditor cannot be forced to release its security interest until all payments are made by the debtor under the plan and the debtor has received a discharge." *In re Thompson,* 224 B.R. 360, 367 (Bankr.N.D.Tex. 1998).  Judge Dennis Michael Lynn, in *Gray,* a November 2002 opinion, found no prohibition in the Code against including in a Chapter 13 plan a provision requiring release of a secured creditor's lien upon satisfaction of the secured claim. *In re Gray,* 285 B.R. 379, 389 (Bankr.N.D.Tex. 2002).

Both opinions recognize the debtor's right to modify the rights of holders of secured claims in Chapter 13 and, therefore, that "lien stripping" is available. *See In re Gray,* 285 B.R. at 385–86; *In re Thompson,* 224 B.R. at 364–65.  Judge Abramson in *Thompson* adopted the position that a Chapter 13 plan is a "new contract," containing bilateral covenants and considerations. *In re Thompson,* 224 B.R. at 366 (citing *In re Scheierl,* 176 B.R. 498, 504–05 (Bankr.D.Minn.1995)).  The debtor's right to a discharge and "various ancillary remedies" is therefore conditioned upon the debtor's completion of payments under the plan. *Id.* In addition, a Chapter 13 debtor's absolute right to dismiss under section 1307(b) of the Code requires consideration of the provisions of section 349. *Id.* As noted in *Thompson:*

> If a debtor's case is dismissed prior to completion of the plan payments and discharge, § 349(b) unravels the bankruptcy in an attempt by the Bankruptcy Code to leave the parties as it found them. Under this provision, upon dismissal of a debtor's Chapter 13 bankruptcy case, the title to the property revests in the debtor and the secured interest in the property revests in the secured creditor.

*In re Thompson,* 224 B.R. at 366.  This revesting of rights is potentially frustrated, according to *Thompson,* if secured creditors must release their liens prior to plan completion. *Id.* The issue, then, is whether the creditor's lien can be reinstated if the case is dismissed after the secured creditor was required to release its lien. *Id.* This may not be possible if the debtor has sold the property, in most cases a car, to a third party. *Id.* at 366–67.

Judge Lynn, in *Gray,* employs a detailed statutory analysis. *In re Gray,* 285 B.R. 379 (Bankr.N.D.Tex.2002).  As noted, *Gray* begins with the premise that lien stripping is available in Chapter 13, and then first reviews section 1325, which generally provides that the plan must comply with the Code. *Id.* at 386 (citing 11 U.S.C. § 1325(a)(1) (2002)).  Next, *Gray* looks to section 1322(b)(10), which allows any plan provision "not inconsistent" with the Code. *Id.* (quoting 11 U.S.C. § 1322(b)(10)).  *Gray* concludes that section 1329(b)(9) (which permits vesting of property on confirmation with the debtor), when read together with section 1327(a) and (b) (providing that, except as otherwise stated in the plan, property vests in debtor free and clear of liens), appears to allow confirmation of a plan that contains a lien release provision. *Id.* at 386–87.

The *Gray* opinion then addresses sections 1322(b)(2) and 1325(a)(5)(B), two Chapter 13 provisions that address treatment of secured claims, as well as section 506, which determines the secured status of an under-secured claim, and finds they contain nothing that prohibits a provision requiring a release of lien upon payment of a secured portion of a claim. *Id.* at 387–88.  Finally, *Gray* finds that neither sec-

tion 1328, which addresses the discharge in Chapter 13, nor section 349, which addresses the effect of dismissal, prohibits a lien release provision. *Id.* at 388–89. *Gray* states that any problems with placing the parties back to where they were at the time the case was filed, as mandated by section 349, can be addressed at the time of dismissal. *Id.* at 389. The court can, for example, direct reinstatement of liens released under the plan. *See id.*

This court finds both opinions persuasive. *Gray* noted that "the primary difference between its conclusion and that reached by Judge Abramson ... is not one of legal substance but rather which party will have the burden of acting in a strip down situation." *Id.* It concludes as follows: "[w]hether it might make more sense for a debtor to bear that burden, Congress did not leave the court the option of excluding from debtors' plans clauses requiring secured creditors to release their liens upon payment of the value of their collateral." *Id.*

This court cannot, however, agree with the result reached in *Gray.* The court is convinced that a provision requiring a lien release prior to plan completion and discharge is inconsistent with the Code, admitting, however, that the precise basis for this conclusion is uncertain. Both *Thompson* and *Gray* agree that section 349 requires a revesting or reinstatement of rights upon dismissal. In this regard, section 349(b) provides as follows:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under

section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

■ *Thompson* and *Gray* also agree that section 506(d) is not the operative provision of the Code that allows lien stripping in Chapter 13. *In re Gray,* 285 B.R. at 386 n. 27; *In re Thompson,* 224 B.R. at 364. *But see In re Smith,* 287 B.R. 882, 885 (Bankr.W.D.Tex.2002). Therefore, *Gray* and *Thompson,* by recognizing the application of section 349, cannot be referring to subsection (b)(1)(C). Presumably they rely on section 349(b)(3), which, as stated, provides for revesting of rights. However, section 349(b)(3) provides for the revesting of rights concerning "property of the estate." 11 U.S.C. § 349(b)(3). Neither *Gray* nor *Thompson* addressed whether the property at issue was exempt property. The car in this case, the 1995 Oldsmobile, is exempt property. The 1995 Oldsmobile has, therefore, been exempted from the Debtors' estate. The Fifth Circuit has held that exempt property is not property of the estate. *See Sherk v. Texas Bankers Life & Loan Ins. Co. (In the Matter of Sherk),* 918 F.2d 1170, 1174 (5th Cir.1990), *abrogated on other grounds, Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Hardage v. Herring Nat'l Bank,* 837 F.2d 1319, 1322 (5th Cir.1988). *See also IRS v. Luongo (In the Matter of Luongo),* 259

F.3d 323, 338 n. 1 (5th Cir.2001) (Garza, J., dissenting) (citing to numerous opinions for the proposition that exempt property ceases to be property of the estate when exemption is upheld).

■ Moreover, when section 349(b)(3) refers to property of the estate, it is referring to the status of property at the time of dismissal. *See United States v. Standard State Bank,* 91 B.R. 874, 879 (W.D.Mo.1988); *In re Searles,* 70 B.R. 266, 270 (D.R.I.1987) ("the 'property of the estate' that revests in its prior owners after dismissal includes only the property left in the estate at the time of dismissal"); *Derrick v. Richard L. Grafe Commodities Inc. (In re Derrick),* 190 B.R. 346, 352 (Bankr. W.D.Wis.1995); *In the Matter of Depew,* 115 B.R. 965, 972 (Bankr.N.D.Ind.1989). This raises the question whether section 349 is even applicable. But, section 522(c) may lead to the same result. It provides:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
> > (1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;
> >
> > (2) a debt secured by a lien that is—
> >
> > > (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
> > >
> > > (ii) not void under section 506(d) of this title;
> > >
> > > (B) a tax lien, notice of which is properly filed; or
> > >
> > > . . . .

11 U.S.C. § 522(c).

■ Under section 522(c), exempt property is not generally liable for prepetition debts of the debtor, *except* debts secured by a lien against the exempt property. *Id.* at § 522(c)(2)(A). A "debt" means a "liability on a claim." *Id.* at § 101(12). A "claim" is broadly defined, but generally means a "right to payment." *Id.* at § 101(5). The debt, which incorporates both a secured and unsecured portion of a claim, does not go away in Chapter 13 until the discharge is granted, which, in turn, occurs upon completion of the Chapter 13 plan.

■ The debtor has the burden of proving his plan complies with section 1325 of the Code, which requires that the plan comply with all applicable provisions of the Code. 11 U.S.C. § 1325(a)(1); *In re Dickerson,* 232 B.R. 894, 897 (Bankr.E.D.Tex. 1999). If section 349 is applicable, it directs that the debtor and his creditors are to be put back to their prepetition status. 11 U.S.C. § 349(b). In the vast majority of these cases, the affected collateral is a car, which is easily sold once the lien is released. In this event, the court can fathom no remedy that insures that the dictates of section 349(b) are met. On the other hand, if the property at issue is exempt property and section 349 is inapplicable, section 522(c) provides that such property remains liable for "debts" secured by an unavoided lien against the exempt property. *See* 11 U.S.C. § 522(c)(2)(A). In Chapter 13, the "debt" is not discharged until plan completion. *See id.* § 1328(a). Both section 349(b) and section 522(c) imply that the stripping of the lien must await plan completion.

Finally, the court addresses the argument made by the Debtors and the Chapter 13 Trustee that requiring the early lien release is a result of secured creditors desiring an accelerated payout on their secured claims. The early lien release serves as an incentive for debtors to propose plans with accelerated payments on

secured claims. This logic is difficult to follow. A debtor and a creditor can certainly agree, as is effectively done in the vast majority of cases before this court, that the creditor will release its lien upon payment of the secured portion of the claim in return for a shorter payout.

FMCC opposes the lien release here. This court is of the opinion that the Code cannot be construed to allow, over a creditor's objection, a provision requiring release of lien upon payment of the secured portion of the claim and before completion of the plan and granting of discharge to the debtor.

### III. Conclusion

For the foregoing reasons, the court concludes that FMCC cannot be forced to release its lien against the 1995 Oldsmobile until all payments are made by the Debtors under the plan and the Debtors have received a discharge. The Debtors' plan will be denied confirmation without prejudice to filing a modified plan that removes the lien release provision as to FMCC. A separate order will be entered by the court consistent with this decision.