**In re Arnulfo CHAPARRO MARTINEZ and Aurora Garcia Martinez, Debtors.**

**No. 02–51203–RLJ–13.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

May 21, 2003.

Sammy Clay Gregory, Stace Williams, Lubbock, TX, for Debtor.

Robert B. Wilson, Lubbock, TX, Chapter 13 Trustee.

## MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

The court considers the Motion for Approval of Settlement of Personal Injury Claim and Proposed Distribution of Proceeds (the "Motion") filed by the Debtors Arnulfo and Aurora Martinez (the "Debtors"). Robert B. Wilson, the Standing Chapter 13 Trustee (the "Trustee"), objects to approval of the motion, while Stace Williams, the attorney for the Debtors in connection with the referenced personal injury claim, contends the proposed distribution should be modified to provide for payment of additional claims.

### Background

The Debtors filed this Chapter 13 case on October 3, 2002. On October 25, 2002, they filed their schedules and statement of financial affairs. Under Schedule C (Property Claimed as Exempt), the Debtors made the following exemption claim:

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| Debtors have pending personal injury claim as the result of an automobile accident in March '02—Stace Williams is counsel for debtor | Texas Ins.Code art. 21.22 § 1 | 100% | $10,000 |

The Debtors' exemption claim corresponds with their description of the personal injury claim in Schedule B (Personal Property). There, at paragraph 20, the personal injury claim (again identifying Stace Williams as counsel) is listed as a contingent and unliquidated claim. It recites that the estimated value of the claim is $10,000.

The section 341 meeting of creditors was held November 14, 2002. On January 21, 2003, Stace Williams, on Debtors' behalf, settled the personal injury claim for $23,000, which sum he is presently holding in his firm's trust account. Neither the Debtors nor Williams have sought approval from the bankruptcy court of Williams's employment by the Debtors.

By the Motion, the Debtors request that the court approve the settlement and authorize disbursement of $8,871.85 to Stace Williams and $225 to Debtors' counsel.

The Debtors would then receive the balance of $13,903.10. The proposed $8,871.85 distribution to Stace Williams represents Williams's one-third contingency fee of $7,666.67, plus expenses of $333.33 and loans by Williams to the Debtors of $871.85.

In addition to the Debtors' proposed distribution of $8,871.85, Williams requests that the following medical bills also be paid from the settlement proceeds: Kothmann Chiropractic—$3,450; University Medical Center—$1,300. Neither of these medical providers have timely filed a proof of claim in this case. Under Williams's proposal, the Debtors would ultimately receive $9,153.10.

The Trustee objects to approval of the Motion. Specifically, the Trustee objects to: (1) distribution of more than $10,000 of the proceeds to Debtors, contending their exemption is limited to $10,000; (2) payment of Williams's fees and expenses from the proceeds, because Williams failed to follow the application, disclosure, and affidavit requirements of the Code and of the Rules, and any assignment of the personal injury suit to Williams is not binding in bankruptcy; (3) payment of the bills of the medical providers, arguing that such providers are nothing more than prepetition unsecured creditors, which have failed to file claims; (4) payment of loans made by Williams, as such loans were not approved by the court; and (5) disbursing any proceeds—exempt or otherwise—to the Debtors, as such funds constitute disposable income which, under the provisions of Chapter 13, must be used in funding Debtors' plan. Finally, the Trustee objects to Debtors' bankruptcy counsel's request for additional compensation in the amount of $225, arguing that the bankruptcy counsel's representation of Debtors on this matter did not benefit the estate and was not in the best interest of creditors.

## Discussion

### 1. Jurisdiction

The court has jurisdiction over the Debtors' claim of exemption, and the issues related thereto, pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(B). For the reasons set forth herein, the court lacks jurisdiction to approve the settlement or to adjudicate any claims to proceeds of the settlement or to order any distribution of such proceeds.

### 2. Extent of Exemption

The initial question is whether the entirety of the settlement proceeds, the $23,000, is covered by the Debtors' claim of exemption or whether, as the Trustee argues, the exemption is limited to $10,000. The Debtors listed the personal injury claim on their schedule of exempt property. In the column labeled "Current Market Value of Property Without Deducting Exemption," the Debtors stated a value of $10,000. In the column labeled "Value of Claimed Exemption," the Debtors listed "100%." The Debtors therefore claimed 100% of the asset as exempt. This is to be distinguished from those situations where a debtor claims an exempt value as less than the current market value of the asset, in which case the debtor is limited to the stated value of the exemption. *See, e.g., In re Soost,* 262 B.R. 68 at 73–74 (8th Cir. BAP 2001) (holding that debtor had failed to exempt entire asset where debtor claimed $1.00 as exempt, yet valued asset at $26,000). In addition, Debtors properly listed the claim under Schedule B as a contingent and unliquidated asset. Schedule B specifically instructs debtors to "[g]ive [an] estimated value of each" contingent or unliquidated claim. In this case, the $10,000 stated value of the personal injury claim was an estimate. The Debtors unambiguously claimed "100%" of the personal injury claim as exempt prop-

erty. No objection was filed to either the validity or to the amount of the exemption within the time period permitted by Rule 4003. The exemption, therefore, extends to the gross settlement proceeds of $23,000.

### 3. Proceeds are not Property of the Estate

■ As of the commencement of the case, the personal injury claim became property of the estate by virtue of section 541 of the Code. *See Wischan v. Adler (In the Matter of Wischan)*, 77 F.3d 875, 877 (5th Cir.1996). Debtors claimed the personal injury claim as exempt in its entirety, as explained above. This exemption was settled by December 14, 2002, upon the expiration of thirty days following the meeting of creditors, as no objections were lodged to the claim of exemption. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992). As of that date, and because the personal injury claim was successfully exempted in its entirety, the claim and its proceeds ceased to be property of the estate, instead becoming property of the debtor. *See, e.g., In re Day*, 292 B.R. 133, 136–37 (Bankr.N.D.Tex.2003) (noting that, pursuant to applicable case law, fully exempt property is not "property of the estate").

As the entire proceeds of the personal injury claim are exempt, and therefore not property of the estate, the Fifth Circuit's *In the Matter of Hargis* opinion controls the remaining issues. *Palmer & Palmer P.C. v. United States Trustee (In the Matter of Hargis)*, 887 F.2d 77 (5th Cir.1989). *In the Matter of Hargis* involved a bankruptcy court decision directing disgorgement of attorney's fees. *Id.* at 78. The law firm of Palmer & Palmer represented the debtors for numerous years, both prepetition on matters not related to bankruptcy, and postpetition as debtors' bankruptcy counsel. *See id.* The debtor-husband died shortly after filing the joint Chapter 11 petition with his wife. *See id.* The debtor-wife received $700,000 in life insurance proceeds, which were not property of the estate. *See id.* at 78–79. The debtor-wife then used the insurance proceeds to pay Palmer & Palmer's prepetition and postpetition fees. *See id.* at 78.

However, Palmer & Palmer failed to file an application for employment, disclosure of compensation, or any of the other filings required by the Code and by the Rules. *See id.* Based on these failures, the bankruptcy court ordered Palmer & Palmer to disgorge all fees received from the debtors while debtors-in-possession, disqualified Palmer & Palmer as debtors' bankruptcy counsel, assessed sanctions against Palmer & Palmer, and dismissed the bankruptcy case. *See id.* The only issue before the Fifth Circuit was the order of disgorgement. *See id.* at 78–79.

The Fifth Circuit rejected the arguments made by the United States Trustee in support of the disgorgement order and denial of all attorney's fees, arguments virtually identical to those of the Trustee in the present case. The circuit began by holding that, because the debtor-wife used property of the debtor to pay Palmer & Palmer's claims,

> the bankruptcy court had no authority to order disgorgement of the funds received by Palmer, which consisted wholly of non-estate assets. Even the [United States] trustee concedes that there exists no statute or rule proscribing the payment of pre-petition debts with non-estate assets. From this perspective, and estate assets not being involved, the situation is precisely as though Palmer

& Palmer had rendered its services *gratis.*

*Id.* at 79.

The circuit then noted that section 549(a), which permits avoidance of postpetition transfers, applies "only to 'property of the estate.'" *Id.* (quoting 11 U.S.C. § 549(a)). The circuit found that ample authority exists for the proposition that transfers made to prepetition creditors out of non-estate assets may not be avoided. *See In the Matter of Hargis,* 887 F.2d at 79. The circuit explained:

> Nor is there any general bankruptcy policy that is disserved by permitting such payments. The avoidance powers of the bankruptcy trustee and the power of the bankruptcy court to regulate professional services are exclusively geared toward protecting the rights of creditors via protection of the bankruptcy estate. Where, as here, payment of a claim is made out of non-estate assets, this goal is in no way served by requiring disgorgement of the payment. To the contrary, the other creditors are more likely helped than harmed, as the payment of one creditor out of non-estate assets frees up estate assets for payment of the other creditors and allows each to take a correspondingly larger slice of the bankruptcy pie.

*Id.*

The circuit next rejected the United States Trustee's argument that a debtor-in-possession owes an absolute fiduciary duty not to prefer one creditor over another. *See id.* The circuit agreed that a fiduciary duty exists, but only with respect to estate funds. *See id.* "The debtor may do what he will with non-estate funds." *Id.* Finally, the circuit rejected the argument "that preferential payments out of non-estate property impermissibly harm creditors whose claims may survive bankruptcy." *Id.* While the circuit recognized

that potential problems concerning such preferential payments may exist, the circuit stated that "the intended congressional solution was not the establishment of sweeping regulatory power over non-estate property ... there are no legislative inhibitions upon use of these funds." *Id.* at 80.

Thus, the Fifth Circuit reversed the order of disgorgement for the following reasons: (1) the debtor could use wholly non-estate funds to pay prepetition and postpetition attorney's fees even though such attorneys failed to comply with the Code's requirements, because such attorneys were not being paid from estate proceeds; (2) nothing prohibits a voluntary payment by the debtor out of wholly non-estate funds; (3) and a debtor-in-possession does not owe a duty not to prefer one creditor over another concerning wholly non-estate funds. *See id.* at 78–79. In other words, the debtor may use his property, i.e., non-estate property, as he sees fit; the Code's rigorous provisions regulating attorney's fees are not impacted unless such fees concern the bankruptcy estate. *See id.*

*In the Matter of Hargis* is directly on point. The only difference is that, in *Hargis,* the life insurance proceeds never became property of the estate by virtue of section 541, as the debtor-wife's right to such proceeds accrued more than 180 days after the filing of the petition. *See id.* at 79. In the present case, the personal injury claim initially became property of the estate, but ceased to be property of the estate thirty days after the meeting of creditors was held and no objection to Debtors' exemption of the personal injury claim was filed. *See In re Day,* 292 B.R. 133, 136–37 (Bankr.N.D.Tex.2003). The court fails to see how this distinction compels the court to exercise jurisdiction over the settlement proceeds in the instant case.

## Conclusion

As the Debtors have already settled the personal injury claim, and given it was the Debtors' decision to settle as they saw fit, Debtors' request for approval of the settlement is unnecessary, if not moot. *See In the Matter of Hargis,* 887 F.2d at 79. In addition, for the reasons stated, the court lacks jurisdiction to address the proposed disbursements of the settlement proceeds. The Motion will be denied. In doing so, the court is not passing on the propriety of the proposed distribution of the proceeds.