**In re Betty Ballard QUISENBERRY, Debtor.**

**Betty Ballard Quisenberry, Plaintiff,**

**v.**

**American State Bank, Defendant.**

**Bankruptcy No. 02–20609–RLJ–13.**
**Adversary No. 03–2004.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

June 30, 2003.

Troy A. Blackwell, Waggoner, Miller and Blackwell, Amarillo, TX, for Debtor/Plaintiff.

Robert Michael McCauley, Jr., McWhorter, Cobb and Johnson, Lubbock, TX, for Defendant.

### MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

Before the court is the adversary complaint filed by Betty Ballard Quisenberry ("Debtor"), seeking turnover of $11,165.64 from defendant American State Bank ("ASB"). Debtor alleges that ASB, pre-petition, setoff $11,165.64 on deposit in Debtor's checking account with ASB; that Debtor may avoid this alleged setoff either as an involuntary preference under section 547(b) or as an avoidable setoff under section 553(b); and that $11,165.64 is accordingly property of the estate which Debtor may partly exempt. ASB contends it had a valid security interest in Debtor's checking account and its application of the $11,165.64 to Debtor's loan was a foreclosure on a security interest which is unavoidable under section 547(b) or section 553(b).

### I. Background

Trial of this adversary was held on May 15, 2003. The parties stipulated to all relevant facts. The court adopts the parties' stipulated facts and restates those facts that are pertinent to the court's decision. On December 11, 2001, Debtor obtained a loan from ASB in the original amount of $58,283.70. Such loan, which the parties refer to as the "Truck Loan," was secured by a 2001 Chevrolet pickup and a 1992 Peterbilt truck. Unable to make the scheduled payments on the Truck Loan, Debtor voluntarily surrendered the Peterbilt truck to ASB on or about May 2, 2002.

On May 7, 2002, Debtor attempted to cash a check at ASB made payable to her in the amount of $11,165.64. ASB did not make the funds immediately available to Debtor. Instead, ASB seized the $11,165.64 and applied it against the balance remaining on the Truck Loan "as an exercise of [ASB's] rights to setoff." Final Joint Pretrial Order ¶ E.6. Debtor did not intend for ASB to apply the funds against the Truck Loan.

Debtor filed her Chapter 13 bankruptcy petition on May 30, 2002, a date less than 90 days after the setoff. Debtor has listed the $11,165.64 as an asset on her schedules, and claimed an exemption in such

funds to the extent of $8,024. No party in interest has filed an objection to Debtor's claim of exemptions. Prior to filing the present adversary, Debtor requested the Chapter 13 trustee to take action to recover the $11,165.64. The trustee represented that he would take no such action. Debtor, therefore, has standing to pursue the present action. The "first deficiency amount," for purposes of section 553(b), is $57,336.02. The second deficiency amount, for purposes of section 553(b), is $46,251.59. The difference between the "first deficiency amount" and the "second deficiency amount" is $10,984.43.

## II. Discussion

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(E), (F), and (K). Section 542 authorizes turnover of property "that the debtor may exempt under section 522." 11 U.S.C. § 542(a) (2003). The Debtor's right to exempt the funds setoff by ASB requires a determination of whether, and to what extent, Debtor (in the Trustee's stead) may avoid or recover the offset funds under sections 547(b) or 553(b). 11 U.S.C. § 522(h).

### A. Whether ASB Foreclosed on a Security Interest or Exercised General Right of Setoff

ASB argues that, by applying the funds against the Truck Loan, ASB did not merely exercise its general right of setoff, but instead foreclosed on a security interest, which ASB contends it held in Debtor's checking account. Relying on *Smith v. Mark Twain Nat'l Bank*, 805 F.2d 278, 289–90 (8th Cir.1986), ASB submits that the recovery and avoidance provisions of section 547(b) and section 553(b) do not extend to valid prepetition foreclosures of security interests. Thus, ASB concludes, Debtor may not recover the $11,165.64.

■ ASB must first establish that it held a valid prepetition security interest in the checking account. *See, e.g., In re Ledis*, 259 B.R. 472, 478 (Bankr.D.Mass.2001) ("when a secured creditor seeks to enforce a security interest in a debtor's property, the enforcing creditor bears the burden of proving it has a security interest in the property sought pursuant to applicable non-bankruptcy law"). State law governs whether ASB held a security interest in Debtor's checking account. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 846–47 (Bankr.N.D.Tex.2003). Texas law is the applicable state law. *See* Joint ex. B (parties' security agreement providing that Texas law governs). ASB's alleged security interest may have arisen in one of two ways. First, ASB argues that its right of setoff was itself a security interest or lien which, when exercised, was the equivalent of foreclosing a security interest. In other words, ASB held a security interest by operation of law. Second, ASB argues that Debtor granted ASB a consensual security interest in her checking account.

■ ASB, merely by virtue of its status as the depository bank, did not hold a security interest in Debtor's checking account by operation of law: the right to setoff is not the equivalent of a security interest or lien. In *Bandy*, the Supreme Court of Texas considered the nature and extent of a bank's ability to setoff an account on deposit with the bank, thereby also considering the nature of the bank/customer relationship. *Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609 (Tex.1992). In pertinent part, *Bandy* stated:

A bank's right of setoff is similarly ancient, stemming from the banker's lien of the law merchant. The theory behind

the banker's lien is that a bank has a lien on all of a customer's property that is in the bank's possession for the amount due the bank from the customer in the ordinary course of business. The banker's lien has been widely accepted in other jurisdictions and has been recognized by at least one Texas court.

The bank's right in situations such as this is more appropriately called a setoff than a lien. A debtor/creditor relationship is created when a customer opens a general depository account with a bank. Such a bank account constitutes a debt where the bank is the debtor and the customer is the creditor. When the customer also owes the bank money, such as through a promissory note, the bank is the creditor of the customer. It is this mutual debtor/creditor relationship, which occurs when a depositor also borrows money from the bank, that gives rise to the bank's right of setoff.

*Id.* at 618–19 (internal citations omitted). The court went on to explain that:

> [a] general account is one deposited without restrictions. The funds deposited become the property of the bank and a debtor/creditor relationship is created. *"Banker's lien" is not an appropriate description of this relationship because a bank cannot have a lien on its own property.*
>
> A special account is created when a customer deposits funds for a specific purpose, as for example when a customer deposits funds intended for the payment of bills. In that case the funds remain the property of the customer and a bailor/bailee relationship is created.

*Id.* at 618 n. 4 (emphasis added) (internal citations omitted) [1]. ASB's right of setoff, therefore, was not itself a security interest or lien. *See id.;* TEX. BUS. & COM. CODE ANN. § 9.340(b) & cmt. 3 (Vernon 2002) (speaking of and treating setoff and security interest in deposit account as two separate rights). *See also In re Holder,* 182 B.R. 770, 776 (Bankr.M.D.Tenn.1995) ("The common law concept of setoff is a right, not a lien"); *In re Stephenson,* 84 B.R. 74, 77 (Bankr.N.D.Tex.1988) ("The common law concept of setoff is a right; not a lien").

■ With respect to ASB's argument that it foreclosed on a consensual security interest, ASB must establish that Debtor, in fact, granted ASB a security interest in her checking account. Article 9 of Texas's version of the Uniform Commercial Code [2] (labeled Chapter 9 in Texas) provides that:

> Except as otherwise provided … a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>
> (1) value has been given;
>
> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
> (3) one of the following conditions is met:
>
> (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
>
> \* \* \* \* \* \*

---

**1.** No evidence has been introduced to the effect that Debtor's checking account was anything other than a personal checking account, and therefore a general account under Texas law.

**2.** Since the Truck Loan was entered into on December 11, 2001, the new Article 9 governs the present controversy. *See* TEX. BUS. & COM. CODE ANN. §§ 9.701(b) (Vernon 2002) (providing that effective date of revised Article 9 is July 1, 2001).

(D) the collateral is deposit accounts, electronic chattel paper, investment property, or letter-of-credit rights, and the secured party has control under Section 9.104, 9.105, 9.106, or 9.107 pursuant to the debtor's security agreement.

TEX. BUS. & COM. CODE ANN. § 9.203(b). Assuming that elements (1) and (2) are met, ASB held a security interest in Debtor's checking account under Texas law if Debtor either "authenticated a security agreement" thereby meeting subsection (3)(A), or ASB had control of Debtor's checking account "pursuant to the debtor's security agreement" as prescribed by subsection (3)(D). *Id.* § 9.203(b)(3).

■ In either event, the parties must have entered into a security agreement. " 'Security agreement' means an agreement that creates or provides for a security interest." *Id.* § 9.102(a)(74). " 'Security interest' means an interest in personal property or fixtures that secures payment or performance of an obligation." *Id.* § 1.201(37)(A). Read together, therefore, a security agreement means an agreement that *creates or provides* for an interest in personal property that secures payment or performance of an obligation. The key requirement is that the agreement, or some ancillary document, must create or provide for the security interest. *Id.* § 9.102(a)(74).

■ Property not covered by a security agreement is not subject of a security interest, unless a security interest arises by operation of law. *See Orix Credit Alliance Inc. v. Omnibank N.A.,* 858 S.W.2d 586, 590 (Tex.App.—Houston [14th Dist.] 1993, writ dism'd); *Crow–Southland Joint Venture No. 1 v. North Fort Worth Bank,* 838 S.W.2d 720, 723–24 (Tex.App.—Dallas 1992, writ denied); *Villa v. Alvarado State Bank,* 611 S.W.2d 483, 486–87 (Tex.Civ. App.—Waco 1981, no writ); *Mosley v.*

*Dallas Entm't Co. Inc.,* 496 S.W.2d 237, 240 (Tex.Civ.App.—Tyler 1973, writ dism'd). No security interest in Debtor's checking account arose by operation of law. *See, e.g., Bandy v. First State Bank, Overton, Texas,* 835 S.W.2d 609, 618–19 & n. 4 (Tex.1992). The question, then, is whether the parties' security agreement granted ASB a security interest in Debtor's checking account. *See, e.g., Mosley,* 496 S.W.2d at 240 (agreement cannot create a security interest "where it does not grant the creditor an interest in the collateral").

■ The parties' security agreement sets forth the agreement between debtor and creditor concerning rights in collateral. *See Villa,* 611 S.W.2d at 486–87. In construing a security agreement, the primary role of the court is to ascertain the true intent of the parties. *See Morgan Bldgs. & Spas Inc. v. Turn–Key Leasing Ltd.,* 97 S.W.3d 871, 876 (Tex.App.—Dallas 2003, no pet.) ("the test for creation of a security interest is whether the transaction was intended to have the effect as security"). The parties must have intended to create a security interest. *See id.* "No formal wording is required, and the court, in arriving at the intent of the parties, should examine the substance of the documents in light of the circumstances of the case." *Id.* The true intention of the parties is determined by examining the entire security agreement, including any contemporaneously executed documents, in an effort to harmonize and to give effect to all the provisions of such agreement so that none will be rendered meaningless. *See id.* "When a contract is not ambiguous it is the responsibility of the court to give effect to the intent of the parties as expressed therein. It is the objective, not subjective, intent that controls." *Dallas Bank & Trust Co. v. Frigiking Inc.,* 692 S.W.2d 163, 166 (Tex.App.—Dallas 1985,

writ ref'd n.r.e.) (applying principles of contract interpretation to security agreement).

The note representing the Truck Loan grants no security interests or otherwise attempts to secure such note. *See* Joint ex. A. Rather, the parties' "Commercial Security Agreement" speaks to security interests, providing as follows:

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

COLLATERAL DESCRIPTION. The word "Collateral" as used in this Agreement means the following described property in which Grantor is giving to Lender a security interest for the payment of the indebtedness and performance of all other obligations under the Note and this Agreement:

2001 CHEVROLET PICKUP [ ]

1992 PETERBILT TRUCK [ ]

In addition, the word "Collateral" also includes the following:

(A) All accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction,

loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's rights, title, and interest in and to all computer software required to utilize, create, maintain, and process and such records or data or electronic media.

\* \* \* \* \* \*

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Kaogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

Joint ex. B. Additionally, the "Definitions" section of the agreement defines the term "collateral" to mean "all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement." *Id.*

▆▆▆▆ Thus, the proper objective interpretation of this security agreement is: (1) Debtor granted ASB a security interest in collateral; collateral is a defined term, defined to include those rights and inter-

ests listed in the "Collateral Description" section of the agreement; and the "Collateral Description" section lists the various rights, interests, and items of property which Debtor pledged to ASB. "In Texas, a writing is generally construed most strictly against its author," the author in this case being ASB. *Temple–Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984). *Accord Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 591–92 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (strictly construing security agreement against drafter thereof). Additionally, the maxim *expressio unius est exclusio alterius*, under which "the naming of one thing excludes another," applies to contractual interpretation. *CKB Assocs., Inc. v. Moore McCormack Petroleum Inc.*, 734 S.W.2d 653, 655 (Tex.1987). *Accord Melvin Green Inc. v. Questor Drilling Corp.*, 946 S.W.2d 907, 911 (Tex.App.—Amarillo 1997, no writ) (applying maxim of *expressio unius est exclusio alterius* to prohibit interpretation of contract which would have included "consultant" in contractual indemnity paragraph specifically listing "Operator, its officers, directors, employees and joint owners" as indemnified parties).

Therefore, because collateral is a defined term and includes the rights and interests listed in the "Collateral Description" section, thereby excluding other possibilities under the doctrine of *expressio unius est exclusio alterius*, and because the security agreement must be strictly construed against ASB, the security agreement grants ASB a security interest in only the rights, interests, and items of property listed in the "Collateral Description" section of the security agreement.

The "Collateral Description" section of the agreement nowhere mentions Debtor's specific checking account or deposit accounts in general. *See* Joint ex. B. Such section includes "[a]ll accounts, general intangibles, instruments . . .," but then qualifies this definition with the following language: "arising out of a sale, lease, or other disposition of any of the property described in this Collateral section." *Id.* This means that only those accounts, general intangibles, etc., that arise as a result of a sale, lease, or other disposition of the collateral are themselves defined as collateral—a situation not implicated by the facts of the current case [3]. Thus, the "Collateral Description" section of the agreement does not identify Debtor's checking account as an item of collateral.

■ Debtor's checking account is referenced in the "Right of Setoff" section of the agreement. By definition, the "Right of Setoff" section of the agreement is not the "Collateral Description" section. Thus, any right or item of property listed in the "Right of Setoff" section does not serve as collateral. *Id.* Moreover, the "Right of Setoff" section of the security agreement does not itself create a security interest in Debtor's checking account. Such section merely "reserves a right of setoff" to Debtor's checking account; it makes no mention of such terms as "secu-

---

**3.** The parties have not stipulated concerning the source of the $11,165.64. There is no indication that such funds represented proceeds from the disposition of collateral, such that ASB might have held a security interest to such funds under subsections (B), (C), or (D) of the Collateral Description section of the security agreement. As ASB has the burden of proving that such funds constituted proceeds, etc., and ASB failed to carry such burden, the $11,165.64 in question were not proceeds or otherwise as contemplated by such subsections. *See, e.g., In re Ledis*, 259 B.R. 472, 478 (Bankr.D.Mass.2001) ("when a secured creditor seeks to enforce a security interest in a debtor's property, the enforcing creditor bears the burden of proving it has a security interest in the property sought pursuant to applicable non-bankruptcy law").

rity," "security interest," or "collateral." *Id.* Additionally, such section grants ASB nothing new: such section "reserves a right of setoff," which is a right that ASB has as a depository bank regardless of the security agreement. *See Bandy v. First State Bank, Overton, Texas,* 835 S.W.2d 609, 618–19 & n. 4 (Tex.1992) (rejecting argument that bank's right of setoff is in nature of a banker's lien).

The court concludes that the parties did not intend for ASB to hold a security interest in Debtor's checking account, and that the security agreement in fact grants no such security interest. It is unnecessary to determine whether section 553(b) authorizes recovery of a prepetition setoff where such setoff constitutes a foreclosure on a security interest, for the simple reason that ASB held no security interest in Debtor's checking account to foreclose. Accordingly, ASB's seizure of the funds on deposit in Debtor's checking account amounted to no more than an exercise of ASB's general right of setoff which, while appropriate in and of itself, is nonetheless potentially recoverable under section 553(b) and potentially avoidable under section 547(b).

**B. Debtor's Standing**

As an initial matter, sections 553(b) and 547(b) authorize the *trustee* to recover certain prepetition transfers, thereby raising the question of whether the debtor has standing to pursue a recovery under section 553(b). 11 U.S.C. §§ 547(b); 553(b)(1) (2003). In this regard, section 522(h) provides that the debtor may "recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer," if such transfer is avoidable by the trustee under section 547 or section 553, and if the trustee does not attempt to avoid such transfer.

*Id.* § 522(h)(1)-(2). The parties have stipulated that Debtor has "standing under 11 U.S.C. § 522(h) to pursue this matter." Final Joint Pretrial Order ¶ E.15. *See also Realty Portfolio Inc. v. Hamilton (In the Matter of Hamilton),* 125 F.3d 292, 298 (5th Cir.1997) (holding that section 522(h) grants Chapter 13 debtor standing, in certain situations, to pursue trustee's strong-arm avoidance powers). The parties have not, however, addressed the extent of Debtor's standing.

■ Section 522(h) grants the debtor standing to "recover a setoff *to the extent* that the debtor could have exempted such property." 11 U.S.C. § 522(h) (emphasis added). Standing under section 522(h) includes the requirement that "the transferred property is of a kind that the debtor would have been able to exempt from the estate." *In the Matter of Hamilton,* 125 F.3d at 297. In the present case, the parties agree that Debtor can exempt $8,024 of the $11,165.64 at stake. As Debtor may pursue a section 547(b) or 553(b) action to the extent only that she is able to exempt the recovery, Debtor is limited to avoiding or recovering $8,024. *See* 11 U.S.C. § 522(h). *See also City Nat'l Bank v. Chabot (In re Chabot),* 992 F.2d 891, 895 (9th Cir.1993); *Wachovia Bank & Trust Co. v. Opperman (In re Opperman),* 943 F.2d 441, 443–44 (4th Cir. 1991) (construing section 522(f): "[t]hus, only that part of a lien which actually interferes with the debtor's homestead exemption may be avoided"); *In re D'Ambrosia,* 61 B.R. 588, 590 (Bankr.N.D.Ill. 1986) ("It is only if the trustee himself proceeded directly under section 547 that a judicial lien could potentially be avoided in its entirety rather than merely to the extent of the debtor's exemptions as section 522(h) provides").

## C. Recovery of Prepetition Setoff Under Section 553(b)

 Having resolved the Debtor's standing, the next issue is whether Debtor may recover the funds setoff by ASB. Section 553(b) provides:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b). "The application of this statute is strictly mathematical, and the test is whether the insufficiency on the date of the setoff is less than the insufficiency 90 days before the date of the filing of the petition. If it is, the difference in the insufficiency ... is recoverable by the trustee or the debtor." *Braniff Airways Inc. v. Exxon Co. USA*, 814 F.2d 1030, 1040 (5th Cir.1987) (internal citation and parentheses omitted).

As explained by the Fifth Circuit, the amount which is recoverable by the trustee or the debtor is calculated as follows:

(1) Ascertain any amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of setoff.

(2) Ascertain the same figure for the date 90 days prior to the filing of the petition or for the first date during the 90–day period when the amount of the claim of the creditor exceeded the debt owing to the debtor.

(3) The trustee is entitled to recover any amount by which the figure in (2) exceeds that in (1).

The key factor, then, is the term "insufficiency." This term is defined as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim." Thus, we must determine (a) the amount of any insufficiency on the date of the setoff and (b) the insufficiency 90 days prior to the date of the filing of the petition, or the first date during the 90 days when an insufficiency existed.

*Id.*

ASB setoff the funds in question within ninety days of the filing of the petition, thereby making such setoff eligible for recovery under section 553(b). 11 U.S.C. § 553(b)(1). The parties have stipulated that the deficiency amount on the date of offset, as contemplated by part (1) of the Fifth Circuit's test, was $46,351.59, and that the deficiency amount ninety days before the filing of the petition, as contemplated by part (2) of the Fifth Circuit's test, was $57,336.02. The parties have further stipulated that the difference between the two deficiency amounts, as contemplated by part (3) of the Fifth Circuit's test, is $10,984.43. Accordingly, since "application of [section 553(b)] is strictly mathematical," and since such application yields a recoverable amount of $10,984.43, Debtor may recover, pursuant to section

553(b), $8,024 of the funds setoff by ASB, as limited by Debtor's interest thereto under section 522(h). *See Braniff Airways Inc.,* 814 F.2d at 1040.

### D. Attorney's Fees

Debtor's attorney requests allowance of additional compensation in the amount of $400, to be paid from the estate, for prosecuting this adversary. Debtor's attorney bases this request on his assertion that his actions "will net the estate more than seven ... times the amount of additional attorney fees requested." Final Joint Pretrial Order ¶ C.39. However, since Debtor's standing to prosecute this adversary is limited to the extent of her exemption of the recovery, all of such recovery will inure exclusively to the benefit of Debtor. *See* 11 U.S.C. § 522(h). All of the recovered funds will be exempt, and therefore the exclusive property of the Debtor in her personal capacity. *See, e.g., In re Day,* 292 B.R. 133, 136–37 (Bankr. N.D.Tex.2003). The estate does not benefit from a successful prosecution of this adversary. *See id.*

■■■ Section 330 governs the issue of whether Debtor's attorney is entitled to be compensated from the estate for services rendered. 11 U.S.C. § 330(a)(1)(A). Through use of the terms "actual" and "necessary," section 330(a) mandates that, in order to be compensated from the estate, "any work performed by legal counsel on behalf of a debtor must be of material benefit to the estate." *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In the Matter of Pro–Snax Distribs. Inc.),* 157 F.3d 414, 426 (5th Cir.1998). *Accord In re Bennett,* 133 B.R. 374, 378 (Bankr.N.D.Tex. 1991) (Akard, J.). In the Fifth Circuit, this test does not look to the reasonableness of services or expenses at the time that such services or expenses are incurred. *See In the Matter of Pro–Snax*

*Distribs., Inc.,* 157 F.3d at 426. Rather, the test is an objective after-the-fact test: "whether [ ] services resulted in an identifiable, tangible, and material benefit to the bankruptcy estate," regardless of the reasonableness of such services at the time that they were rendered. *Id.*

■■■ Debtor's attorney's prosecution of this adversary resulted in no benefit to the estate. In effect, this adversary constituted nothing more than a preservation of Debtor's exemption. As such, the court denies allowance of Debtor's attorney's requested compensation. *See, e.g., Mayer, Glassman & Gaines v. Washam (In re Hanson),* 172 B.R. 67, 73 (9th Cir. BAP 1994) (holding that "services rendered in defending exemptions are not for the benefit of the estate"); *In re Kloubec,* 251 B.R. 861, 865 (Bankr.N.D.Iowa 2000); *In re Howerton,* 23 B.R. 58, 59 (Bankr.N.D.Tex. 1982) (holding that attorney may not be compensated from the estate for work performed in connection with securing the debtor's exemptions).

### III. Conclusion

In conclusion, the parties' security agreement did not grant ASB a security interest in Debtor's checking account, nor did ASB hold such a security interest by operation of law. It is unnecessary to consider whether section 553(b) applies to a prepetition foreclosure of a security interest, as ASB held no security interest to foreclose. Accordingly, ASB's seizure of the $11,165.64 amounted to nothing more than an exercise of ASB's general right of setoff.

ASB's setoff is subject to recovery under section 553(b). Under section 522(h), Debtor has standing to prosecute such a recovery, but only to the extent of her exemption of such recovery, in this case $8,024. Debtor is entitled to recover $8,024 from ASB for its prepetition setoff.

Having found for Debtor under section 553(b), it is unnecessary to determine whether Debtor may recover such funds as an avoidable preference under section 547(b), as Debtor's standing under section 547(b) is similarly limited to the $8,024 exemption.

Finally, the court denies Debtor's attorney's request for additional compensation from the bankruptcy estate.